David Chesnoff (NSB No. 2292)
Richard Schonfeld (NSB No. 6815)
CHESNOFF & SCHONFELD
520 S. Fourth Street
Las Vegas, Nevada 89101
Telephone: 702-384-5563
Facsimile: 702-598-1425
Email: dzchesnoff@cslawoffice.com
Email: rschonfeld@cslawoffice.com

Robert D. Mitchell (Arizona State Bar No. 011922)
  (Will comply with Local Rule IA 10-2 within 7 days)
MITCHELL & ASSOCIATES, P.C.
1850 North Central Avenue, Suite 2030
Phoenix, AZ 85004
Telephone: (602) 468-1411
Facsimile: (602) 468-1311
Email: robertmitchell@mitchell-attorneys.com

Anthony Michael Glassman (California State Bar No. 37934)
  (Will comply with Local Rule IA 10-2 within 7 days)
GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 North Bedford Drive, Suite 204
Beverly Hills, CA 90210-5157
Telephone: (310) 278-5100
Facsimile: (310) 271-6041
Email:  amg@gbsjlaw.com

Attorneys for Plaintiffs BRADLEY STEPHEN COHEN
and COHEN ASSET MANAGEMENT, INC.

## UNITED STATES DISTRICT COURT

## STATE OF NEVADA – LAS VEGAS

| | |
|---|---|
| BRADLEY STEPHEN COHEN, an individual; and COHEN ASSET MANAGEMENT, INC., a California corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ROSS B. HANSEN; NORTHWEST TERRITORIAL MINT, LLC, a Washington limited liability company; and STEVEN MERRILL FINCH,<br><br>　　　　　Defendants. | Case No.<br><br>**PLAINTIFFS' VERIFIED COMPLAINT; DEFAMATION AND DEFAMATION PER SE; INVASION OF PRIVACY/FALSE LIGHT; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE; INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

232615.4

1

Plaintiffs Bradley Stephen Cohen and Cohen Asset Management, Inc., for their Complaint against Defendants Ross B. Hansen, Northwest Territorial Mint, LLC, and Steven Merrill Finch, allege and state as follows:

## THE PARTIES

1.     Plaintiff Bradley Stephen Cohen ("Bradley Cohen") is an individual who resides in Los Angeles, California.  Plaintiff Bradley Cohen is the President and Chief Executive Officer of Cohen Asset Management, Inc.

2.     Plaintiff Cohen Asset Management, Inc., a California corporation, is a privately held real estate investment firm.  Through affiliated entities, Plaintiff Cohen Asset Management, Inc. acquires, finances, operates and is involved with the disposition of industrial properties across the United States.

3.     Plaintiffs are informed and believe that at all times relevant to this action, Defendant Ross B. Hansen ("Ross Hansen") is and was a resident of King County, Washington and he is and was a part-time resident of Nevada, where he oversees his company Defendant Northwest Territorial Mint, LLC.

4.     Plaintiffs are informed and believe that Defendant Northwest Territorial Mint, LLC is a Washington limited liability company owned solely and/or controlled by Defendant Ross Hansen.  Northwest Territorial Mint, LLC's "physical address" (as described on its website) is 80 East Airpark Vista Boulevard, Dayton, Nevada 89403.

5.     Plaintiffs are informed and believe that Defendant Steven Merrill Finch ("Steven Finch") is a resident of Nevada who is currently on active duty with the United States Army and is stationed at Fort Bragg, North Carolina.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this matter because Defendant Northwest Territorial Mint, LLC is located in and conducts business in Nevada, Defendant Ross Hansen wholly owns Defendant Northwest Territorial Mint, LLC and spends significant time in Nevada overseeing his company, and Defendants

232615.4

2

Ross Hansen and Steven Finch have caused events occurring in Nevada giving rise to the causes of action alleged herein, i.e., they published and/or arranged to publish false and defamatory websites about Plaintiffs from Nevada.

7.     The amount in controversy, represented by the potential loss in business to Plaintiffs and the potential damage to Plaintiffs' reputation, exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs. This Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because all Defendants are residents of Nevada and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE RELEVANT FACTS

### A.     The Websites and Internet Postings.

9.     In April 2012, a defamatory and malicious website was discovered by Plaintiffs located at http://bradley-cohen.com ("bradley-cohen.com"). Copies of the web pages are attached hereto as Exhibit 1. The website was an intentionally false and disparaging publication seeking to harm and injure Plaintiffs. It compares Plaintiff Bradley Cohen to the notorious fraud and Ponzi scheme perpetrator Bernard L. Madoff ("Bernie Madoff"). The website was anonymously set up by the Defendants in a way to attempt to hide the ownership of the site. Other related web postings and blogs directing back to the site were established by Defendants. *See* Exhibit 2. These postings linked back to the subject website or another nearly identical site set up at http://bradleyscohen.com ("bradleyscohen.com"). *See* www.bradleyscohen.com web pages (6/4/12 and 7/24/12 versions), Exhibit 3.

10.     Defendants intentionally conspired to create and publish the websites bradley-cohen.com (which is now defunct, as explained below in paragraph 50) and bradleyscohen.com (which is still live at the time of filing this Complaint), for the purpose of damaging Plaintiffs' reputation and causing economic harm to Plaintiffs' business. Both websites (as well as the related blogs and posts) contain explicit and

232615.4

3

implicit false and defamatory statements.

11.    The home page for bradley-cohen.com was titled "Bradley S. Cohen's Investors Lose Tens of Millions of Dollars."  Although bradleyscohen.com contained the same false and defamatory statement as of June 4, 2012, the website has since removed that particular statement.

12.    The subtitles of bradley-cohen.com was, and bradleyscohen.com continues to be, "Is Bradley S. Cohen the Next Bernie Madoff?  The alarming similarities between these two investment firm founders."  Both websites contain photos of Plaintiff Bradley Cohen juxtaposed with a photo of Bernie Madoff, the latter whose name and face are synonymous with fraud, greed, and white collar crime.  Both websites are intended to give rise to the false implication that Plaintiff Bradley Cohen, like Bernie Madoff, is a criminal and con artist who is scamming his investors through a Ponzi scheme.  A visitor to the websites is led to believe by Defendants' careful and clever editing that Plaintiffs engaged in similar criminal acts as those committed by Bernie Madoff.

13.    There is absolutely no factual basis for such false and scandalous allegations.  Plaintiff Bradley Cohen has a lifetime history of success and integrity, and a stellar reputation.  As CEO of Cohen Asset Management, Plaintiff Bradley Cohen oversees the business activities of Plaintiff Cohen Asset Management Inc., and its affiliated entities.  Through affiliated entities, Plaintiff Cohen Asset Management, Inc.'s portfolio has included extensive industrial and office properties held nationally, with current holdings comprising several million square feet, and a current estimated value of several hundred million dollars.  Plaintiff Bradley Cohen resides in Los Angeles, California with his wife, Cheryl, of 30 plus years.  Plaintiff Bradley Cohen is an active member in the Los Angeles area community, Plaintiff Bradley Cohen has been honored as Man of the Year by the Boy Scouts of America, is a member of the Board of Governors at Cedars Sinai Medical Center, received the Golden Shofar Award from Yeshiva Gedolah and has served on the National Board

1 of the Friends of the Israeli Defense Forces (FIDF). Plaintiff Bradley Cohen has

2 been a speaker at industry conferences and serves on the Board of Directors of the

3 National Association of Real Estate Investment Managers organization (NAREIM)

4 and was a past member of the Pension Real Estate Association (PREA).

5     14.    The comparison in the malicious websites of Plaintiff Bradley Cohen to

6 the notorious con man Bernie Madoff is extraordinarily false, misleading, malicious

7 and damaging.

8     15.    Bernie Madoff is perhaps the most reviled financial fraudster in United

9 States history. Bernie Madoff operated a fictitious investment firm that supposedly

10 invested billions of dollars of customers' assets even though the firm had not

11 actually traded any securities for more than a decade at the time its Ponzi scheme

12 unraveled in 2008. Bernie Madoff and his accomplices knowingly created false

13 trading confirmations and account statements for clients purporting to show

14 investment transactions that never took place. Bernie Madoff pled guilty on March

15 12, 2009 to eleven felonies involving securities fraud, mail fraud, investment adviser

16 fraud, money laundering, perjury and theft, and is serving a 150 year prison

17 sentence. While Bernie Madoff's operation was supposedly audited, the reality was

18 that his accountant, David Friehling, was a small-time auditor with a tiny office in

19 suburban, New York, who simply rubber stamped Bernie Madoff's manufactured

20 records. In November of 2009, David Friehling pled guilty to criminal fraud.

21 Bernie Madoff's fraud became a global scheme that ensnared hedge funds, charities

22 and individuals. Bernie Madoff enticed thousands of investors, including figures

23 like Senator Frank Lautenberg of New Jersey, the Hall of Fame pitcher Sandy

24 Koufax and a charity run by Elie Wiesel, the Nobel Peace Prize laureate. The

25 fraud's collapse erased as much as $65 billion that his customers thought they had

26 on account with Bernie Madoff's firm.

27     16.    In contrast, Plaintiff Bradley Cohen has a stellar reputation in the real

28 estate industry. Plaintiffs Bradley Cohen and Cohen Asset Management, Inc. have

232615.4

PLAINTIFFS' VERIFIED COMPLAINT

successful track records as investors of primarily industrial properties in select submarkets throughout the United States, including Oregon, Southern California, Northern California, Arizona, Texas, South Carolina, Missouri, and other major areas. Unlike Bernie Madoff who falsified accounts and transactions that never occurred, all of Plaintiffs' and their affiliates' substantial real estate investments are matters of public record, and can be readily verified in state and local offices where real estate ownership documents are lawfully recorded. Plaintiffs use appraisers such as CB Richard Ellis ("CBRE") and Blake Global. Additionally, each transaction includes reputable law firms such as Gibson, Dunn & Crutcher, certified public accountants, third party zoning experts (PZR), environmental professionals, engineers (civil and mechanical), Title Companies such as First American Title, nationally recognized mortgage brokers such as Holiday Fowler & Fenoglio, and nationally recognized real estate brokers such as Lee & Associates and CBRE. Moreover, when lenders are involved, the lenders also do their own due diligence.

17.     Plaintiffs' investment experience spanning over several decades includes more than 100 commercial and industrial properties acquired and more than 100 properties sold. Plaintiffs' senior management group collectively has more than 80 years combined experience in the real estate industry. Plaintiffs' executive management team includes a chief investment officer with a graduate degree in real estate development from the University of Southern California, a chief operating officer with degrees from Cornell University and the University of Michigan, and a chief financial officer who has a CPA background with a major national accounting firm and experience with a NYSE listed company's finance team.

18.     Plaintiffs' investors and joint venture partners have included private equity funds, entities with public pension funds, insurance companies, as well as sophisticated high-net-worth individuals. Moreover, Plaintiffs' fund business has been audited annually by Deloitte & Touche LLP, one of the largest and most respected big four accounting firms in the world.

19.     In short, Defendants' comparison of Plaintiffs with Bernie Madoff on both websites, including the display of Plaintiff Bradley Cohen's photograph with that of Bernie Madoff, was intentionally edited to confuse and mislead the reader and give rise to the false and defamatory implication that Plaintiffs are financial fraudsters in the same vein as Bernie Madoff.

20.     Defendants also intentionally edited bradley-cohen.com to give rise to the false implication that Plaintiff Bradley Cohen was convicted of fraud in Philadelphia in the early 1990s.  The website had a subpage entitled "History of Convictions" and recited scandalous allegations against Plaintiffs committed by someone who is definitely not Plaintiff Bradley Stephen Cohen.

21.     The Brad S. Cohen that was the subject of a fraud conviction in Philadelphia in the early 1990s is named Brad Scott Cohen.  This fact is easily verifiable from court records, news articles and public records available online to the public, including Defendants.  *See* attached court records easily obtained from public records available on the Internet, Exhibit 4.  *See also* news articles concerning Brad Scott Cohen conviction, Exhibit 5.  Plaintiff is Bradley Stephen Cohen, not Brad Scott Cohen.  Plaintiff Bradley Stephen Cohen was born in June of 1956 and is 56.  *See* Bradley Stephen Cohen Lexis Public Records Report Excerpt, Exhibit 6.  According to public records, Brad Scott Cohen of Philadelphia was born in March of 1959 and is 53.  *See* Brad Scott Cohen Lexis Public Records Report Excerpt, Exhibit 7.

22.     Defendants knowingly and intentionally ignored, or with reckless disregard failed to confirm via basic online research, that Plaintiff Bradley Stephen Cohen is not the Brad Scott Cohen of Philadelphia with the fraud conviction. Without question the writers of bradley-cohen.com spent many hours gathering photos of Plaintiff Bradley Cohen and his home, and other information, with the intent of damaging Plaintiffs' reputation and business with these false associations. At best, Defendants were willfully blind and had no regard for the veracity of the

1  information they published with regard to whether Plaintiff Bradley Cohen was
2  convicted of fraud.  More likely, Defendants knew they had the wrong Bradley S.
3  Cohen when they purposely created the false implication that the two men were one
4  and the same.

5      23.    In addition to the implied defamatory charges that Plaintiffs are guilty
6  of crimes similar to those committed by Bernie Madoff and that Plaintiff Bradley
7  Cohen was convicted of fraud, the bradley-cohen.com website contained, and the
8  bradleyscohen.com website continues to contain, numerous expressly false,
9  misleading and defamatory statements.

10     24.    Both bradley-cohen.com falsely asserted, and bradleyscohen.com
11  continues to falsely assert, that Plaintiffs' and their related companies' "losses
12  continue to mount as the companies lose tenants."

13     25.    Both bradley-cohen.com falsely asserted, and bradleyscohen.com
14  continues to falsely assert, that "Company assets have been looted" and that "Cohen
15  Asset Management's intricate dealings . . . are so complicated an army of
16  investigators may be necessary to unravel the web."  These fabricated statements are
17  untrue as there is transparency with real estate assets, which are recorded in public
18  records.

19     26.    Both bradley-cohen.com falsely asserted, and bradleyscohen.com
20  continues to falsely assert, that "Investigators have speculated that Cohen Asset
21  Management . . . is actively engaging in lawsuits in an attempt to hold off creditors
22  seeking financial information."  In reality, there are no such "investigators" looking
23  into Plaintiff Cohen Asset Management, Inc., and the allegations regarding lawsuits
24  and attempts to hold off creditors are false and without basis.

25     27.    Both bradley-cohen.com falsely asserted, and bradleyscohen.com
26  continues to falsely assert, "Beware of leasing from Cohen Asset Management or
27  from any of its companies, who are known to sue tenants and former tenants based
28  on unfounded accusations and greed."  This is a false and defamatory statement

232615.4

8

without any basis in fact.

28.    Both bradley-cohen.com falsely asserted, and bradleyscohen.com continues to falsely assert, that "Under Bradley Cohen's stewardship, the company and its properties have been involved in numerous lawsuits. In a current Seattle lawsuit, the company is attempting to scam former tenants out of millions of dollars. The company has taken several hundred thousand dollars from one former tenant in the lawsuit. How many millions has it taken from its thousands of other tenants?" Defendants are referring to the lawsuit brought by the landlord of industrial space formerly leased by Defendants Ross Hansen and Northwest Territorial Mint, LLC, which lease Defendants breached by, among other things, leaving the premises environmentally contaminated. Two prejudgment remedies have been issued against Defendants Ross Hansen and Northwest Territorial Mint, LLC for more than a half million dollars based upon findings made by the judge in the case against Defendants. The lawsuit against Defendants is the motivation behind Defendants' smear campaign against Plaintiffs. The suggestion that Plaintiffs have "scammed" tenants or that they have wrongfully taken "millions" from other tenants is false, without factual basis, and defamatory.

**B.    Defendants' Attempts to Hide Their Involvement and Their Malicious Intent.**

29.    Defendants established the websites and Internet postings through means intended to conceal their involvement. Defendants used off-shore and anonymous hosting companies, PayPal accounts, and intermediaries to be front persons for their misconduct.

30.    Through a series of demand letters to the website registrant and the webhost, Plaintiffs were able to have the first website, bradley-cohen.com, taken down. However, Defendants relocated the information to various other places on the Internet.

31.    The reason Defendants defamed Plaintiffs was retaliation. Defendants

9

Ross Hansen and Northwest Territorial Mint, LLC formerly leased space in a commercial industrial property located at 1307 West Valley Highway North, Auburn, Washington 98001 ("Auburn Property").  At the time, the Auburn Property was owned by Auburn Valley Industrial Capital LLC ("AVIC"), a company affiliated with Plaintiffs.  AVIC initiated two lawsuits (the first in 2009 and the second in 2010) against Defendants Ross Hansen and Northwest Territorial Mint, LLC related to their breaches of the lease between AVIC and Defendants, which expired on April 30, 2010.  The cases, which have been consolidated, are captioned Auburn Valley Industrial Capital LLC v. Ross B. Hansen, et al., King County Case No. 10-2-41256-5 KNT and 09-2-41614-1 KNT ("AVIC v. NW Mint Litigation"). The claims made against Defendants include environmental contamination of the formerly leased premises and the damages claimed are over $1 million, plus legal fees and costs.  The trial of the matter commenced on July 30, 2012 and is pending.

32.     Defendant Ross Hansen was a very difficult tenant, not only for AVIC, but for its predecessor, MegaWest, LLC.  Defendant Ross Hansen has on many occasions demonstrated himself to be very contemptuous of the landlord and the Defendants' obligations under the lease.  For example, while a tenant at the Auburn Property, Defendant Ross Hansen repeatedly broke into the locked telecommunications room in the building, at least once by cutting through the adjoining wall between the leased premises and the telecommunications room for the building, rather than making proper arrangements to access that room through Plaintiffs' local property manager.  Defendant Ross Hansen even did so despite a temporary restraining order entered on November 16, 2009 which was modified on November 20, 2009, and a preliminary injunction entered by Judge Cheryl Carey of the King County Superior Court on December 11, 2009 (Exhibit 8), prohibiting Defendant Ross Hansen from doing so, which was called to the court's attention in a subsequent hearing at which Defendants' counsel was admonished by the court concerning the violation.  Defendant Ross Hansen also repeatedly intimidated and

1  failed to cooperate with the local property manager, Chanda Sovan.

2      33.    In addition, after the AVIC v. NW Mint Litigation commenced,

3  Plaintiffs learned that Defendant Ross Hansen has a long prior history of

4  disrespecting law and authority.  For example, in 1995 a *Seattle Times* article

5  reported that Defendant Ross Hansen is a "convicted tax cheat, suspected drug-

6  money launderer and confirmed government hater" who had just spent "nearly three

7  years in federal prison."  The article addressed Defendant Ross Hansen's lawsuit

8  against the City of Kent alleging police officers violated his constitutional rights and

9  drove him out of business, pleading guilty to IRS tax charges, a subsequent

10  bankruptcy, his alleged fraud of several customers, and threats of violence to city

11  officials.  The article also reported about Defendant Ross Hansen's "penchant for

12  defying the law, angering some of his customers and openly fighting with the

13  government." *See Seattle Times* "Tarnished Metals Dealer Makes Comeback - -

14  Auburn Man Says Kent Police, City 'Ruined My Life'", January 18, 1995, Exhibit 9.

15  Defendant Ross Hansen served time in the U.S. Penitentiary in Lompoc, California

16  but was moved among facilities for getting in fights with other inmates and people

17  in authority at the facility.  *See* Ross B. Hansen Deposition Transcript, January 31,

18  2012, pp. 57-59, Exhibit 10.

19      34.    Plaintiffs have also discovered records from the Washington

20  Department of Ecology that reflect Defendant Ross Hansen's history of being

21  uncooperative with investigators from the Department of Ecology when they sought

22  to inspect his leased premises at Plaintiffs' property on several occasions, with

23  Defendant Ross Hansen often telling them to get a warrant.  *See* Wash. Dept. of

24  Ecology Records, Exhibit 11.

25      35.    In the AVIC v. NW Mint Litigation, the prior owner of the property

26  was deposed and made clear that Defendant Ross Hansen was a very difficult person

27  who refused access to the premises to not only the owner, but to police and

28  firefighters.  *See* Eric Turbak Deposition Transcript Excerpt, pp. 14-16, Exhibit 12.

232615.4

11

36.   In the AVIC v. NW Mint Litigation, Defendant Ross Hansen also threatened in his January 31, 2012 deposition to make it "painful" for Plaintiffs. Specifically, Defendant Ross Hansen testified in his deposition that "we're going to start ratcheting up the pain. And you know what?   . . . Your client will roll over on the lawsuit." *See* Defendant Ross Hansen 1-31-12 Deposition Transcript Excerpt, Exhibit 13. Defendant Ross Hansen certainly was not referring to the merits of his case, as two prejudgment remedy orders had already been issued in the case against Defendant Ross Hansen totaling over a half million dollars. Moreover, Defendant Ross Hansen has filed numerous dispositive motions, all of which were denied, as were several requests for review by the Court of Appeals. Upon information and belief, Defendant Ross Hansen was threatening to do something outside of the AVIC v. NW Mint Litigation to "ratchet up the pain" to the Plaintiffs. Notably, the website which had been prepared previously was activated within hours of the issuance of a court ruling adverse to Defendant Ross Hansen in the AVIC v. NW Mint Litigation on April 23, 2012.

37.   Defendant Ross Hansen is the source of the content contained on the disparaging websites, and some of the information in the websites could only have come from Defendant Ross Hansen or his attorney, including references to non-public information, such as the deposition of Plaintiffs' employee Doreen Ray in the AVIC v. NW Mint Litigation, who was the corporate representative designated by AVIC for a deposition of AVIC taken by Defendant Ross Hansen's legal counsel.

38.   The statements contained in the web page bradley-cohen.com obviously came directly from Doreen Ray's deposition. The false website states:

> Senior company leadership was "uncomfortable" and refused to answer questions about him and his financial dealings.

*See* Exhibit 1.

39.   This information could only be in reference to Doreen Ray's deposition in the AVIC v. NW Mint Litigation. There have been no other depositions of senior

company leadership of Plaintiff Cohen Asset Management, Inc.

The false website goes on to state:

Recently, the Senior Vice President of Cohen Asset Management, Doreen Ray (pictured right), was asked under oath about the intricacies of company finances. Her response was initially evasive, then ultimately revealed the following ominous facts:

She expressed a **complete inability to explain any details of the company's financial transactions**, despite being the highest ranking officer on the Asset Management Team.

She stated that she was **uncomfortable answering questions** about Bradley Cohen and his financial dealings.

Properties owned by Cohen Asset Management or its related companies have **occupancy rates as low as 28%.**

Properties owned by Cohen Asset Management or its related companies are **currently generating operating losses.**

**Losses continue to mount** as the companies lose tenants.

She **does not know where the money is coming from to cover the operating losses,** but does know that the companies can dip into a revolving line of credit through which all Cohen Asset Management companies are financed.

* * *

Losses of the Cohen Asset Management's CAM Core+ Fund 1 are clear from the company's financial statement below.  How can a company and its owner profit while investors are losing big?

*See* Exhibit 1 (emphasis in original).

40.    In Doreen Ray's deposition on December 7, 2011, the following interchange took place, which was intentionally mischaracterized in the derogatory websites:

```
16   Q  Let me stop you for a second because you used the
17   word "Auburn."  When I use the word "Auburn," I want
18   that to include Cohen Asset Management and all the
19   companies related to Cohen Asset Management.
20        MR. MITCHELL: She's not here as a 30(b)(6)
21   witness of those other companies.  She's only here on
22   behalf of Auburn Valley, and she's not going to answer
23   questions on behalf of Cohen Asset Management.
24        MR. VON KALLENBACH:  Actually, she will answer
25   whatever questions I put to her unless you instruct her
0041
1    not to.
```

13

2   Q  So my question is, is Cohen Asset Management aware
3  of other properties that have been contaminated like
4  it's claimed this property is contaminated?
5       MR. MITCHELL: Only if you know.
6  A  I'm uncomfortable answering on behalf of Cohen
7  Asset Management, and that's not what I was called in
8  to do. So I will not answer that question.
9   Q  I appreciate that, but I would still like an
10  answer.
11   A  I would rather not answer that question.
12   Q  Again, while I appreciate that you might not want
13  to answer the question, I am entitled to an answer and
14  I would like to have one, please.
15       MR. MITCHELL: She told you that she's not
16  authorized or competent to testify on behalf of a
17  company for which she was not called, and she's not
18  going to answer your question.

*See* Doreen Ray Deposition, Vol. 1, p. 40-41, Exhibit 14.

41.    While the derogatory websites' descriptions of Doreen Ray's testimony totally distort and mischaracterize her deposition testimony, the existence and specifics of her testimony and deposition in the AVIC v. NW Mint Litigation is something that is not a public record and only something the parties in the AVIC v. NW Mint Litigation would have knowledge of and be able to access.

42.    The statements concerning the operations of the CAM Core+ Fund 1 appear to be distortions of information taken out of context and misrepresented from the CAM Core+ Fund 1 report, which Defendant Ross Hansen said he located on the Internet. In fact, the bradley-cohen.com web page indicates the source of such information is the "3rd Quarter Financial Report." Perhaps not surprisingly, in the AVIC v. NW Mint Litigation, Defendants introduced the CAM Core+ Fund 1 3rd Quarter Financial Report, as deposition exhibit 104 in Doreen Ray's deposition. It is the only CAM Fund report Defendants used in the case, and the only one referred to in the derogatory websites and blogs.

43.    In Doreen Ray's deposition on February 2, 2012, Defendants explained the source of the CAM Core+ Fund 1 3rd Quarter Financial Report as follows:

0096
1      (Lunch break.)
2      MR. VON KALLENBACH: Over the lunch break I

3   talked to Mr. Hansen regarding Exhibit No. 4, which is
4   the CAM Core Plus Fund 1 quarter report. He did not
5   get it from the Cohen Asset Management website. So he
6   didn't download it from the website and he hasn't
7   downloaded anything else from the website. He found it
8   during an Internet search. I think he said he tried
9   plugging in things like Cohen Asset Management or
10  whatever and came up with this single document. It's
11  the only quarter report we have.
12          MR. MITCHELL: He's absolutely certain that he
13  did not get it off of the CAM website? I just need to
14  know that from a security standpoint.
15          MR. VON KALLENBACH: He says he did not. I
16  certainly tried to do it over the lunch hour myself to
17  see if I could get it. If you click on to "Industrial
18  Relations," it takes you to a password and an ID
19  number. As Ross says, he's not that smart.
20          MR. MITCHELL: The other question we had was,
21  has he downloaded anything else from the Cohen Asset
22  Management website other than what's -- did he?
23          MR. VON KALLENBACH: I have no idea if he did.
24  It would have been the same stuff I downloaded, which
25  are the publications, like Ms. Ray's photograph and all
0097
1   the bios and stuff like that; but nothing confidential.

See Doreen Ray Deposition, Vol. 2, pp. 96-97, Exhibit 15.

44.     Another area of disparagement in the websites is Defendants'
description of Plaintiffs' so-called "Intricate Business Connections":

Bradley S Cohen is associated with an intricate web involving a
number of companies, including 121 Canyon Office Gp, Inc., 651 East
Corporate Drive Industrial Capital LLC and Cohen Asset Management,
Inc.. Bradley S Cohen has 3 known relationships including Brandon
Delf, Cam Core & Fund I', LLC and Cam Fund Capital I', LLC and is
located in Los Angeles, CA.

See Exhibits 1 and 3. Defendants imply that there is something deceptive about
Plaintiff Bradley Cohen's business activities through various companies with which
he is affiliated or controls. In his deposition, Defendant Ross Hansen made a similar
disparaging remark about Plaintiff Cohen Asset Management, Inc.'s corporate
hierarchy as follows:

2   Q   "This company" being who?
3   A   This company being Cohen's group, Mr. Olson and Maureen,
4       you know, whichever -- AVI and the **-- the shell of**
5       **companies that they -- they operate in**.

See Defendant Ross Hansen Deposition, Vol. 2, p. 278, Exhibit 16 (emphasis

1 | added).

2 | 45.   At another time, Defendant Ross Hansen said the following in his

3 | deposition testimony:

```
17                 THE WITNESS:  Your clients and I were
18         involved in some pretty contentious litigation, and your
19         clients are also upside down on this building.  In fact,
20         your building is near bankruptcy.  It's insolvent.
21    Q   (By Mr. Moxon)  The building is near bankruptcy?
22    A   The building is insolvent, according to its own financial
23         statements.
24    Q   And where do you find -- where do you have the building
25         financial statements?
0267
1    A   They're available through public sources.
2    Q   This building?
3    A   This particular building –
4    Q   And you –
5    A   -- is available -- its financials are -- are published by
6         the entity.
7    Q   What entity?
8    A   The controlling entity, which is the CAM 3 or whatever
9         development firm.  And this building is insolvent.
10    Q   The building is insolvent?
11    A   The entity that owns and controls this building is
12         insolvent.
13    Q   And what entity is that?
14    A   Which is the controlling entity, which I believe is CAM 3
15         or whatever it is.
16    Q   And what was the source of that information for you?
17    A   Was their own financial declarations.
18    Q   Their financial declarations.
19    A   Their financial reporting to their investors.
20    Q   And where was that provided to you?
21    A   It was available on the Internet.
22    Q   And when did you read that?
23    A   Just last week.
24    Q   Okay.  And what does that have to do with the – what
25         triggered the investigation?
0268
1    A   Your clients have been using -- and it's right in their
2         report -- have been using the -- the possible
3         contamination of our space as a foil to hold off their
4         investors and explain away their poor investment on – on
5         their building, and have publicly blamed us for their –
6         their building being a money pit, that their building is
7         not producing, quote, the returns that they had
8         anticipated, and it's -- it was -- and it's because of
9         Northwest Territorial Mint and the possible
10         contamination.
11    Q   Are those all words that were in the report, or you're
12         putting, like, "the money pit"?  That doesn't sound
13         like –
```

14    A   Well, the money pit is my words, but their -- I think
15       their quote was, is the reason that the -- that the
16       building is not producing the returns is because the
17       contamination by Northwest Territorial Mint, which we
18       hope then to recover, and it goes on and on and on.
19    Q   Okay.
20    **A   Your client has been using this issue as a foil to hold**
21       **off their creditors and their investors for their poor**
22       **performance, and that's all this is.**
23    Q   In your opinion?
24    A   It's -- in my opinion, it's all theater.

See Defendant Ross Hansen Deposition, Vol. 2, pp. 266-268, Exhibit 17 (emphasis added). Defendant Ross Hansen's diatribe is a very close paraphrase of what was on the derogatory websites and blog postings that Defendants published.

46.    The above information demonstrates Defendant Ross Hansen is the source of the defamatory websites bradley-cohen.com and bradleyscohen.com. In short, Defendants took information from the deposition of Doreen Ray, which is not a public record, plus the CAM Core+ Fund 1 3rd Quarter Financial Report, together with general information available on the Internet and created the attack websites bradley-cohen.com and bradleyscohen.com.

47.    Another reason why it is clear Defendants are responsible for the defamatory web material is the following statement on the disparaging websites:

> Beware of leasing from Cohen Asset Management or from any of its companies, who are known to sue tenants and former tenants based on unfounded accusations and greed. Under Bradley Cohen's stewardship, the company and its properties have been involved in numerous lawsuits. In a current Seattle lawsuit, the company is attempting to scam former tenants out of millions of dollars. The company has taken several hundred thousand dollars from one former tenant in one lawsuit. How many millions has it taken from its thousands of other tenants?

See Exhibits 1 and 3.

48.    The above statements are significant. First, Plaintiff Cohen Asset Management, Inc. is not the owner of the property. Second, the allegation that the company is "known to sue tenants and former tenants based on unfounded accusations and greed" has no basis in fact. If this website was the creation of a disgruntled investor, it would not logically address or sympathize with the tenants.

A disgruntled investor would not use phrases such as "the company is attempting to scam former tenants out of millions of dollars" or "How many millions has it taken from its thousands of other tenants?" The statements are inconsistent with the position of an investor, who has lost money because of the declining real estate market and tenants whose businesses have failed and left properties underwater.

49.     In his deposition on January 31, 2012, Defendant Ross Hansen threatened to make the AVIC v. NW Mint Litigation painful for the Plaintiff, AVIC. The testimony was as follows:

> 3  A  **And -- and also, I'm going to inflict lots of pain on**
> 4     **your client.** And just like the -- the fish --
> 5  Q  How are you going to inflict lots of pain on my client?
> 6     I take that as some kind of threat.
> 7  A  There's no threat in -- at all.
> 8  Q  Oh.
> 9  A  I would never physically harm your client. **I'm going to**
> 10    **do everything within the legal means.** But, you know,
> 11    **your client has got problems, and I'll tell you**
> 12    **something.**
> 13       **I've been actually quite mellow to this point, but**
> 14    **we're going to start ratcheting up the pain.  And you**
> 15    **know what?  Just like the fish and game, they returned**
> 16    **the duck.  Your client will roll over on the lawsuit.**

*See* Defendant Ross Hansen Deposition, Vol. 1, p. 160, Exhibit 13 (emphasis added).

50.     Upon learning of the original website, bradleyscohen.com, Plaintiffs researched available information on the website registrant. The disclosed registrant of the original website is a company named Namecheap, Inc. and its division Whoisguard of Los Angeles, California. The webhost of the website at issue in this matter is LeaseWeb, B.V. at an address of Ocom B.V., P.O. Box 93054, 1090 BB Amsterdam, Netherlands. Upon learning the website registrant and webhost, Plaintiffs' counsel sent them demand letters. *See* Exhibits 18 and 19. Thereupon, the original disparaging website bradley-cohen.com was taken down. The attorney for the website registrant wrote Plaintiffs' counsel on May 11, 2012 and identified the owner of the website as Scott R. Chambers, Azudo, 18 Winnet Way,

1  Southwater, West Sussex RH139TB, phone +44.01403733467, e-mail

2  sales@azudo.com. *See* May 11, 2012 Eugene Rome Letter, Exhibit 20.

3      51.   Plaintiffs obtained records from Scott Chambers, which reflect Scott

4  Chambers communicated with Defendant Steven Finch, who used the e-mail

5  address 80teasal@gmail.com concerning the websites. E-mail correspondence from

6  Defendant Steven Finch to Scott Chambers was sent from the IP address of NW

7  Mint in Nevada, where Defendant Northwest Territorial Mint, LLC currently

8  operates a facility. *See* Scott Chambers' correspondence and enclosures, Exhibit 21.

9  Other communications were anonymous but came from the IP address of NW Mint

10  in Nevada [63.234.13.2], where Defendant Northwest Territorial Mint, LLC

11  currently operates its facility. *See* Scott Chambers' affidavit and records, Exhibit 22.

12  *See also* IP address verification for NW Mint location, Exhibit 23.

13      52.   In an e-mail dated May 2, 2012, Defendant Steven Finch sent an e-mail

14  to Scott Chambers inquiring as follows:

15      You took our web site down. We paid for a year in advance through
        PayPal, and have the documentation for that, so what gives? Is there
16      some mistake on your end? What needs to be done to resolve the
        issue?
17      Do we need to double pay to get it back up?
        Please help as this is an urgent issue for us and the error is on your end.
18      Thanks
        -S
19      [Sent from Steve Finch at 80teasal@gmail.com.]

20  This e-mail was sent from an IP address approximately a half-hour drive from the

21  NW Mint facility in Nevada. The e-mail actually ordering the website listing was

22  placed by Defendant Steven Finch at an IP address belonging to NW Mint. *See* 5-2-

23  12 Steve Finch e-mail, Exhibit 24. Other documents produced by Scott Chambers

24  also link the origination of the website to e-mails sent from NW Mint.

25      53.   On July 10, 2012, Plaintiffs sent Defendant Steven Finch a demand

26  letter regarding the websites. Subsequent to receipt of the letter by Defendant

27  Steven Finch, a copy of the letter (with redactions of information identifying the

28  recipient) was posted on the bradleyscohen.com website. *See*

232615.4

PLAINTIFFS' VERIFIED COMPLAINT

1 | www.bradleyscohen.com web pages (7/24/12 version), Exhibit 3.

2 |     54.    Considerable steps have been taken by Defendants to distance

3 | themselves from the websites and other Internet postings that defame Plaintiffs.

4 | Defendants have used various registrants and webhosts that promise anonymity in

5 | setting up websites.  For example, Azudo is an anonymous host of various websites.

6 | *See* attached article, Exhibit 25, and website at: http://www.azudo.com/.

7 |     55.    Based upon comments on the Azudo website, it appears that Azudo's

8 | business is to help people launch anonymous websites.  Here are some excerpts

9 | from the Azudo site:

> We will register your new domain name for you and keep your information private and away from prying eyes on the web. With an Anonymous Domain Name(s) and Anonymous Hosting account you can keep your identity 100% offline.
>
> We keep you 100% anonymous because:
> #1. We never ask for any of your personal information
> #2. So..We can never give it out to third parties
> #3. We can facilitate anonymous payment methods
>
> 100% Anonymous:
> We never ask for any personal details except an email address (which can be created anonymously). Accounts are setup using usernames that use your email address only. There will be no Whois information if someone does a search on your domain name. We will not even show anyone the email address you signed up with. We accept a number of easy payment providers including accepting cash by post which gives you 100% anonymity.
>
> We are very friendly, so don't be worried about asking us even the silliest of questions we will be happy to help you.
>
> Our packages are bigger and better than the competition. But best of all our prices are the most affordable!
>
> Our servers are located offshore from the USA and UK. All accounts will be hosted in the Netherlands, this will provide clients with greater privacy and security.

*Id.*

    56.    The second website, bradleyscohen.com, was set up using anonymousSpeech.com as the domain registrant and a company known as Ecatel based in the Netherlands as the webhost.

57.     In addition to its potential prejudicial effect on the AVIC v. NW Mint Litigation, Defendants' malicious activity on the Internet has damaged Plaintiffs' reputation and has the potential to cause millions of dollars of damages, and in fact almost destroyed an approximately $170 million deal.  Plaintiffs may never know the potential business lost because of the websites.

58.     Plaintiffs are active investors in real properties all over the country, dealing with sophisticated lenders, such as banks and insurance companies, and investors and joint venture partners, including private equity funds, entities with public pension funds, and sophisticated high-net-worth individuals—many of whom perform background checks on entities and people before investing or loaning their money.  To the extent that these web postings come up in such background investigations, they are material detriments to anyone doing business with Plaintiffs.

## LEGAL CLAIMS

## FIRST CLAIM FOR RELIEF

**(Defamation and Defamation Per Se By All Plaintiffs Against All Defendants)**

59.     Plaintiffs repeat and reallege each and every allegation of the Complaint as if herein again set forth in full.

60.     Defendants' actions as alleged herein constitute defamation. Defendants conspired to knowingly and intentionally publish unprivileged, false, and defamatory statements of and concerning Plaintiffs.

61.     Defendants published these statements out of malice, in retaliation for lawsuits filed by a company affiliated with Plaintiffs over Defendants' breaches of a lease of an industrial rental property.

62.     Defendants' false statements have subjected Plaintiffs to hatred, contempt, ridicule or obloquy, lowered Plaintiffs' reputation in the estimation of the business community and deterred third persons from associating or dealing with them.

63.     Defendants' statements constitute defamation per se as they defame

232615.4

1  Plaintiffs in Plaintiffs' business and trade.

2     64.   Defendants' acts of defamation have caused substantial damages to

3  Plaintiffs.

4     65.   Based upon Defendants' tortious acts of defamation per se, Plaintiffs

5  are entitled to recover presumed damages, as well as their actual and consequential

6  damages against Defendants in a specific amount to be proven at trial.

7     66.   Defendants have knowingly and intentionally engaged in conduct of a

8  malicious, oppressive, or fraudulent nature and have knowingly made false

9  statements of and concerning Plaintiffs, thereby entitling Plaintiffs to an award of

10  punitive damages.

11               **SECOND CLAIM FOR RELIEF**

12  **(Invasion of Privacy/False Light By All Plaintiffs Against All Defendants)**

13     67.   Plaintiffs repeat and reallege each and every allegation of the

14  Complaint as if herein again set forth in full.

15     68.   Defendants' actions as alleged herein constitute invasion of privacy.

16     69.   The publication was substantial and resulted from conduct that would

17  be highly offensive and objectionable to the ordinary person.

18     70.   The publication would be highly offensive to a reasonable person and

19  was, in fact, offensive to Plaintiffs.

20     71.   Defendants' actions have caused damages to Plaintiffs.

21     72.   Based upon Defendants' misconduct, Plaintiffs are entitled to recover

22  all of their actual and consequential damages against Defendants in a specific

23  amount to be proven at trial.

24     73.   Defendants have engaged in conduct of a malicious, oppressive, or

25  fraudulent nature, thereby entitling Plaintiffs to an award of punitive damages.

26

27

28

232615.4

## THIRD CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress

### By Plaintiff Bradley Stephen Cohen Against All Defendants)

74.     Plaintiff Bradley Cohen repeats and realleges each and every allegation of the Complaint as if herein again set forth in full.

75.     Defendants' actions toward Plaintiff Bradley Cohen in intentionally communicating false information regarding Plaintiff Bradley Cohen with the intent to cause Plaintiff Bradley Cohen emotional distress constitutes intentional infliction of emotional distress.

76.     Defendants' actions were extreme in degree, outrageous in character, went beyond all possible bounds of decency, and are regarded as atrocious and utterly intolerable in a civilized community.

77.     Based upon Defendants' intentional misconduct, Plaintiff Bradley Cohen is entitled to recover all of his actual and consequential damages against Defendants in a specific amount to be proven at trial.

78.     Defendants have knowingly and intentionally engaged in conduct of a malicious, oppressive, or fraudulent nature, thereby entitling Plaintiff Bradley Cohen to an award of punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Intentional Interference with Future Expected Business

### By All Plaintiffs Against All Defendants)

79.     Plaintiffs repeat and reallege each and every allegation of the Complaint as if herein again set forth in full.

80.     Plaintiffs have valid contractual relationships and business expectancies, and Defendants knew or acted in assumption of such contractual relationships and business expectancies.  Defendants' intentional actions in posting the false, defamatory information on the Internet has interfered with Plaintiffs' business dealings and/or threatens to cause a breach or termination of such

relationships or expectancies, and/or cause other parties to be hesitant to do business with Plaintiffs.  Defendants' interference was for an improper purpose, and has caused damages to Plaintiffs.

81.     Based upon Defendants' misconduct, Plaintiffs are entitled to recover all of their actual and consequential damages against Defendants in a specific amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF

### (Injunctive Relief By All Plaintiffs Against All Defendants)

82.     Plaintiffs repeat and reallege each and every allegation of the Complaint as if herein again set forth in full.

83.     Plaintiffs request that, following a determination that the offending statements made and published by Defendants on the websites are false and defamatory, the Court enter a final and permanent injunction enjoining any republication of the offending statements and compelling Defendants to take down permanently the offending statements from the websites.

### PRAYER FOR RELIEF

Based upon the foregoing facts, Plaintiffs request judgment awarding the following:

A.     For general and special damages as a result of Defendants' false and defamatory publications concerning Plaintiffs.

B.     For presumed damages for Defendants' knowing and intentional publication of defamation per se of Plaintiffs.

C.     For punitive damages.

D.     For attorneys' fees and costs incurred by Plaintiffs.

E.     For injunctive relief as requested herein.

F.     For such other relief in favor of Plaintiffs and against Defendants as the Court or other trier of fact deems just and appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs demand trial by jury of the causes of action stated herein.

DATED: August   , 2012       CHESNOFF & SCHONFELD

By                                      

DAVID CHESNOFF
RICHARD SCHONFELD
Attorneys for Plaintiffs

PLAINTIFFS' VERIFIED COMPLAINT

**VERIFICATION**

STATE OF CALIFORNIA )
                     } ss.
County of Los Angeles )

I, Bradley Stephen Cohen, an individual and President and Chief Executive Officer of Cohen Asset Management, Inc., do hereby state under oath, and declare under penalty of perjury, as follows:

I have read the foregoing Verified Complaint and its exhibits in their entirety, have personal knowledge of the matters asserted therein, know the contents thereof, and the same are true to the best of my knowledge and belief except as to those matters alleged on information and belief, and as to those I believe them to be true.

Executed at 1900 Avenue of the Stars, Fifth Floor, Los Angeles, California, 90067, this 3rd day of August, 2012.

_____
Bradley Stephen Cohen

SUBSCRIBED AND SWORN before me by Bradley Stephen Cohen this day of August, 2012.

*See attached form*

_____
Notary Public

My commission expires:

_____

232615.3

PLAINTIFFS' VERIFICATION

## CALIFORNIA JURAT WITH AFFIANT STATEMENT
**GOVERNMENT CODE § 8202**

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

_____          _____
Signature of Document Signer No. 1        Signature of Document Signer No. 2 (if any)

State of California

County of Los Angeles

Subscribed and sworn to (or affirmed) before me

on this 3 day of August, 20 12,
    Date        Month              Year
by

(1) Bradley Stephen Cohen,
        Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (√)

(and

(2) _____,
        Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature Justine Reha
              Signature of Notary Public

**JUSTINE REHA**
Commission # 1928027
Notary Public - California
Los Angeles County
My Comm. Expires Apr 3, 2015

Place Notary Seal Above

━━━━━━━━━━━━━━━ **OPTIONAL** ━━━━━━━━━━━━━━━

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)          Item #5910

# TABLE OF EXHIBITS

| Document | Exhibit No. |
|---|---|
| http://bradley-cohen.com website excerpts (4/23/12 version) | 1 |
| Hubpages web page | 2 |
| www.bradleyscohen.com website excerpts (6/4/12 and 7/24/12 versions) | 3 |
| Brad Cohen (Philadelphia) court records excerpt | 4 |
| News articles concerning Brad Cohen (Philadelphia) criminal proceedings | 5 |
| Plaintiff Bradley Stephen Cohen public records report excerpt | 6 |
| Brad Scott Cohen (Philadelphia) public records report excerpt | 7 |
| 11-16-09 Order Granting Motion for Temporary Restraining Order, 11-20-09 Order Modifying Temporary Restraining Order, and 12-11-09 Preliminary Injunction Ruling | 8 |
| Seattle Times "Tarnished Metals Dealer Makes Comeback - - Auburn Man Says Kent Police, City 'Ruined My Life'", January 18, 1995 | 9 |
| Excerpts of Ross Hansen deposition testimony, Vol. 1, pp. 57-59 | 10 |
| Department of Ecology records re NW Mint facility | 11 |
| Excerpts of Eric Turbak deposition testimony, pp. 14-16 | 12 |
| Excerpts of Ross Hansen deposition testimony, Vol. 1, p. 160 | 13 |
| Excerpts of Doreen Ray deposition testimony, Vol. 1, pp. 40-41 | 14 |
| Excerpts of Doreen Ray deposition testimony, Vol. 2, pp. 96-97 | 15 |
| Excerpts of Ross Hansen deposition testimony, Vol. 2, p. 278 | 16 |
| Excerpts of Ross Hansen deposition testimony, Vol. 2, pp. 266-268 | 17 |
| 4-24-12 Demand letter to Namecheap | 18 |
| 4-24-12 Demand letter to LeaseWeb | 19 |
| 5-11-12 Eugene Rome Letter | 20 |
| 7-2-12 Letter from Scott Chambers | 21 |

| | |
|---|---|
| Scott Chambers' affidavit and records | 22 |
| IP Address confirmation | 23 |
| 5-2-12 Steve Finch E-mail and IP address verification | 24 |
| Web article re Azudo.com | 25 |