Marc J. Randazza, Esq., NV Bar #12265
Ronald D. Green, Esq., NV Bar #7360
J. Malcolm DeVoy, Esq., NV Bar #11950
Randazza Legal Group
3625 South Town Center Drive, Suite 150
Las Vegas, NV 89135
702-420-2001
702-420-2003 fax
ecf@randazza.com

Allen Lichtenstein, Esq., NV Bar #3992
3315 Russell Road, No. 222
Las Vegas, NV 89120
Telephone (702) 433-2666
allaw@lvcoxmail.com
Attorneys for Defendants

Dean G. von Kallenbach, Esq., *pro hac vice*
Young deNormandie, P.C.
1191 Second Avenue, Suite 1901
Seattle, WA 98101
206-805-2720
206-623-6923 fax
dgvk@ydnlaw.com

John P. Aldrich, Esq. NV Bar #6877
ALDRICH LAW FIRM, LTD.
1601 S. Rainbow Blvd., Suite 160
Las Vegas, NV 89146
Telephone: (702) 853-5490
jaldrich@johnaldrichlawfirm.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA – LAS VEGAS**

| | |
|---|---|
| BRADLEY STEPHEN COHEN, an individual; and COHEN ASSET MANAGEMENT, INC., a California corporation,<br><br>                      Plaintiffs,<br>      vs.<br><br>ROSS B. HANSEN; NORTHWEST TERRITORIAL MINT, LLC, a Washington limited liability company; and STEVEN EARL FIREBAUGH,<br>                  Defendants. | Case No. 2:12-cv-01401-JCM-PAL<br><br>**CONCISE STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

In support of the Motion for Summary Judgment filed herewith, the following is a concise statement of material facts not genuinely in dispute.

| Fact | Source |
|---|---|
| **ON THE DESCRIPTION OF THE PARTIES** | |
|     1.      Plaintiff Bradley S. Cohen is a well-known real estate investor in Los Angeles, California. |     1.      Plaintiffs' First Amendment Complaint, ECF 40 (hereinafter "FAC"), at ¶ 13. |

| | |
|---|---|
| 2.    Plaintiff Bradley S. Cohen is the president and chief executive officer of Cohen Asset Management (hereinafter "CAM"), a California-based company. | 2.    FAC at ¶ 13 |
| 3.    CAM is a real estate operator, which acquires property on behalf of investors, runs the property, and provides returns to those investors. | 3.    Deposition of Scott McGinness (hereinafter "McGinness Dep."), at 16:11-14 |
| 4.    Both Cohen and CAM are domiciled within the Central District of California. | 4.    FAC at ¶¶ 1-2 |
| 5.    CAM creates a number of affiliated entities to own and manage the various properties it acquires. | 5.    McGinness Dep. at 23:11-23 |
| 6.    CAM and its affiliated entities have industrial and office properties nationally, with a current estimated value of "several hundred million dollars." | 6.    FAC at ¶ 13 |
| 7.    In 2013, CAM's investments currently have a higher value than they did five years ago, it has investments in more property than it did five years ago, and more of CAM's employees in 2013 have a salary of more than $150,000 than five years prior. | 7.    McGinness Dep. at 47:9-21, 49:11-50:17. |
| 8.    Bradley Cohen frequently appears as a guest speaker at national real estate events. | 8.    FAC at ¶ 13; Deposition of Bradley Cohen (hereinafter "Cohen Dep."). at 33 |
| 9.    Bradley Cohen has been honored | 9.    FAC at ¶ 13 |

| | |
|---|---|
| by such organizations such as Boy Scouts of America, Cedars Sinai Medical Center, and Friends of the Israeli Defense Forces. | |
| 10.     Bradley Cohen has received numerous awards and recognitions from local, state, and national government officials, including President George W. Bush and Vice-President Al Gore. | 10.     FAC at ¶ 13; Photos of Awards, attached as Exhibit A; Reha Dep. At 202-25 |
| 11.     Cohen has spoken at real estate investing conferences in the past and has traveled to France on behalf of one organization. | 11.     Cohen Dep. at page 33; Bradley S. Cohen Curriculum Vitae, attached as Exhibit B. |
| **ON THE AUBURN VALLEY INDUSTRIAL CAPITAL LLC V. NORTHWEST TERRITORIAL MINT LITIGATION** | |
| 12.     Auburn Valley Industrial Capital, LLC ("AVIC") is an affiliate of CAM. | 12.     FAC at ¶ 31. |
| 13.     Northwest Territorial Mint leased property from AVIC. | 13.     FAC at ¶ 28. |
| 14.     AVIC sued Northwest Territorial Mint for lease violations, alleging that Northwest Territorial Mint had environmentally contaminated the property they leased from AVIC. | 14.     FAC at ¶ 31 |
| 15.     AVIC was granted a money judgment against NWTM. | 15.     FAC at ¶ 31 |
| 16.     AVIC's damages, and award of attorneys' fees against NWTM, are currently | 16.     FAC at ¶ 31 |

1     on appeal.

2 **ON DEFENDANTS' USE OF THE**

3 **WEBSITES**

4     17.     In 2012, Defendant Ross Hansen        17.     Deposition of Ross B. Hansen

5 developed two websites about Plaintiffs.     (hereinafter "Hansen Deposition") at 31:13-21

6     18.     The websites ask the question        18.     Front Page of

7 whether Cohen is "the next Bernie Madoff."     <bradleyscohen.com>, attached as Exhibit C at

8     1

9     19.     One of the websites was formerly        19.     Front page of <bradley-

10 located at <bradley-cohen.com>, and one is     cohen.com>, attached as Exhibit D; Cohen Dep.

11 currently located at <bradleyscohen.com>.     at 179; Exhibit C

12     20.     The websites feature Defendant        20.     Hansen Dep., at page 43

13 Hansen's opinions about Plaintiffs and their

14 business practices.

15     21.     The websites were registered and        21.     Hansen Dep. 172:16-25; Exhibit

16 hosted anonymously and allowed for third-     C at 7

17 party comment and participation.

18     22.     The information about Plaintiffs        22.     Hansen Dep. at 85:19-86:7

19 on the website was based on Hansen's

20 experiences with Plaintiffs, conversations he

21 had with CAM employees, and documents

22 found through Internet searches.

23     23.     Hansen says his primary purpose        23.     Hansen Dep. at 34:12-24

24 in publishing the websites was a "public

25 service" to the community.

26     24.     Hansen gave final approval on all        24.     Hansen Dep. at 131:4-132:19

27 of the content contained on the websites.

28     25.     Hansen says Defendant Steven        25.     Hansen Dep. at 132:25-133:2

| | |
|---|---|
| 1 | Firebaugh's involvement was "minimal." | |
| 2 | 26.     The registrar shut down the | 26.     FAC at ¶ 50 |
| 3 | website <bradley-cohen.com> in 2012. | |
| 4 | 27.     <bradleyscohen.com> is still | 27.     FAC at ¶ 9 |
| 5 | operational. | |
| 6 | **ON DAMAGES CLAIMED BY** | |
| 7 | **PLAINTIFFS** | |
| 8 | 28.     Plaintiffs allege no actual | 28.     CAM's Responses to |
| 9 | damages from the operation of the websites. | Interrogatories, attached as Exhibit E, at 2-5; |
| 10 | | Bradley S. Cohen's Responses to |
| 11 | | Interrogatories, attached as Exhibit F, at 2-6 |
| 12 | 29.     Plaintiffs have been unable to | 29.     McGinness Dep. at 63; Cohen |
| 13 | assert any demonstrable loss of income or | Dep. at 114:6-15; Exhibit E; Exhibit F |
| 14 | other loss of business resulting from the | |
| 15 | content of Defendants' websites. | |
| 16 | 30.     Cohen recently lost weight since | 30.     Deposition of Steven Fishman |
| 17 | discovering the website, described by friend | (hereinafter "Fishman Dep.") at 38:21-39:4 |
| 18 | Steven Fishman as a "positive" change | |
| 19 | attributed to working out. | |
| 20 | 31.     Plaintiffs are on track to have a | 31.     McGinness Dep. at 99:7-100:7; |
| 21 | profitable 2013 – even more profitable than | ECF 40 ¶ 9; Hansen Dep. at 31:13-21 |
| 22 | 2012 when the Websites came into | |
| 23 | existence. | |
| 24 | 32.     Plaintiff Cohen claims that the | 32.     FAC ¶ 77 |
| 25 | websites have caused him emotional | |
| 26 | distress. | |
| 27 | 33.     Financially, Cohen and CAM are | 33.     FAC ¶ 80; Fishman Dep. at |
| 28 | both doing well. | 38:21-39:4 |

| | |
|---|---|
| **ON THE STATEMENTS MADE ON THE WEBSITES** | |
| 34.   The statements have been seen within the State of California. | 34.   Fishman Dep. at 13:16-14:22; Cohen Dep. at 108:12-109:2; Deposition of Jeffrey (hereinafter "Stern Dep.") at 7:19-24, 25:8-15; FAC at 23-25 |
| 35.   All of Plaintiffs' claims arise from state law. | 35.   FAC at ¶23-25 |
| 36.   The comparison of Bradley Cohen to Bernie Madoff focuses on the facts: That Madoff and Cohen were both members of various boards of directors, that they made political contributions, that they both worked in the investment field, and that they were both the eponymous heads of their respective investment firms. | 36.   Exhibit C at 1-2; Exhibit D at 1-2 |
| 37.   The websites overseen by Defendant Hansen state that Cohen leads a life of "glamour" and "luxury." | 37.   Exhibit C at 1-3, 12; Exhibit D at 1-3, 8, 11 |
| **ON PLAINTIFFS' STATUS AS PUBLIC FIGURES** | |
| 38.   Plaintiffs' business is available to members of the public, so they may participate and invest for Plaintiffs' economic benefit. | 38.   Cohen Dep. at 161:10-21; McGinness Dep. at 39:24-40:4, 71:12-19; Fishman Dep. at 103:12-104:1 |
| 39.   In the past, Cohen has not shied away from receiving public recognition for his accomplishments and involvement | 39.   Exhibit A; Deposition of Justine Reha, (hereinafter "Reha Dep.") at 20:16-25:15 |

| | |
|---|---|
| 1 | within the community. | |
| 2 |    40.   CAM has been a member of the | 40.   Cohen Dep. at 36:22-37:3, 78:8- |
| 3 | National Association of Real Estate | 12 |
| 4 | Investment Managers (NAREIM). | |
| 5 |    41.   Cohen has been a member of | 41.   Cohen Dep. at 36:22-37:3, 78:8- |
| 6 | NAREIM's board. | 12; Exhibit B |

7 **ON THE HOSTING AND REGISTRATION**
8 **OF THE WEBSITES**

| | | |
|---|---|---|
| 9 |    42.   The Websites and their domain | 42.   Firebaugh Dep. at 40:5-41:14; |
| 10 | names were registered anonymously and | Hansen Dep. at 160:6-9; FAC ¶¶ 56-57 |
| 11 | were hosted outside the United States. | |

12 **ON PLAINTIFFS' STATEMENTS ABOUT**
13 **CAM'S CORPORATE STRUCTURE**

| | | |
|---|---|---|
| 14 |    43.   Cohen does not know how | 43.   Cohen Dep. at 262:9-21 |
| 15 | someone with a high school education or | |
| 16 | without real estate training would have | |
| 17 | trouble understanding CAM's operations. | |

18 **ON DEFENDANTS' STATEMENTS**
19 **ABOUT CAM'S CORPORATE**
20 **STRUCTURE**

| | | |
|---|---|---|
| 21 |    44.   The websites stated that | 44.   Exhibit C at 2, 3, 6; Exhibit D at |
| 22 | Plaintiffs' business is structured as an | 2-3, 34 |
| 23 | "intricate web" and "elusive and complex | |
| 24 | web." | |
| 25 |    45.   The websites overseen be | 45.   FAC 40 ¶ 42, Exhs. 1, 3 |
| 26 | Defendant Hansen opined that CAM and its | |
| 27 | affiliate company are "attempting to scam | |
| 28 | former tenants out of millions of dollars" | |

| | |
|---|---|
| 1 | and "complex." | |
| 2 | 46.   The websites state that Plaintiffs | 46.   Exhibit C at 2-4; Exhibit D at 2- |
| 3 | are glamorous, prestigious, wealthy and | 7, 34 |
| 4 | fortunate. | |
| 5 | 47.   Defendants' used question marks | |
| 6 | to ask questions about Plaintiffs' business | 47.   Hansen Dep. at 57:21-58:20 |
| 7 | and financial condition. | |

8  **ON WITNESS' INTERPRETATION OF**
9  **THE STATEMENTS MADE ON THE**
10 **WEBSITES**

| | | |
|---|---|---|
| 11 | 48.   Witnesses acknowledge that the | 48.   Deposition of Leslie Westreich at |
| 12 | statements made on the websites could be | 55:5-22 |
| 13 | opinions. | |

14 **ON THE CAM CORE+ FUND 1**

| | | |
|---|---|---|
| 15 | 49.   The Cam Core+ Fund 1 LLC was | 49.   McGinness Dep. at 35:2-36:16 |
| 16 | funded with 85 million dollars and used to | |
| 17 | purchase commercial and industrial real | |
| 18 | estate. | |
| 19 | 50.   These individual properties | 50.   McGinness Dep. at 36:17-21 |
| 20 | within the Cam Core+ Fund 1 are owned by | |
| 21 | individual limited-liability companies | |
| 22 | created for the sole purpose of owning a | |
| 23 | particular property. | |
| 24 | 51.   In some cases, one limited- | 51.   McGinness Dep. at 36:17-37:4 |
| 25 | liability company may own more than one | |
| 26 | piece of property within the Fund. | |
| 27 | 52.   CAM Core+ Fund 1's value was | 52.   Cohen Dep. at 186:10-188:5; |
| 28 | accounted on a fair market value basis, | McGinness Dep. at 25:6-8, 82:2-14, 87:23- |

| | |
|---|---|
| 1   where the value of the properties comprising | 88:13; Summary of Scott McGinness, attached |
| 2   the Fund's assets was calculated based on | as Exhibit H, at 3 |
| 3   what they could be sold for on the prevailing | |
| 4   market on a regular basis. | |
| 5         53.     The fair market value of the |         53.     Exhibit H at 3 |
| 6   Fund's assets was "written down," or | |
| 7   decreased, by over $45 million between | |
| 8   2008 and 2010. | |
| 9         54.     Plaintiffs' position is that because |         54.     McGinness Dep. at 83:4-14, |
| 10   the Fund's assets have not been liquidated, | 87:23-88:13, 91:14-92:3; Cohen Dep. at 185:22- |
| 11   no loss has been realized. | 186:8 |
| 12         55.     By late 2010, the real estate |         55.     Exhibit H at 3 |
| 13   assets within the funds had declined $45 | |
| 14   million in value. | |
| 15         56.     Plaintiffs claim that it is |         56.     Cohen Dep. at 185:22-186:8; |
| 16   defamatory for Defendants to say investors | McGinness Dep. at 83:4-14 |
| 17   "lost" money because the asset had not been | |
| 18   sold, precluding any loss from being | |
| 19   "realized." | |
| 20   **ON THE WEBSITES' CHARTS AND** | |
| 21   **REPRESENTATIONS OF PLAINTIFFS'** | |
| 22   **LOSSES** | |
| 23         57.     The chart titled "Total Return |         57.     Exhibit C at 6; Exhibit D at 9; |
| 24   Composition Net of Fees As Of 9/30/2010" | ECF 40-1 at 8 |
| 25   is a direct copy from CAM's 3d Quarter | |
| 26   Financial Report. | |
| 27         58.     CAM's analysis of its total assets |         58.     Exhibit H at 1; Exhibit C at 5; |
| 28   and the Defendants' chart depicting the same | Exhibit D at 8 |

| | |
|---|---|
| 1   show the exact same starting and ending | |
| 2   points. | |
| 3        59.     CAM's analysis shows a more | 59.     Exhibit H at 1 and Exhibit C at 5, |
| 4   precipitous drop in total assets from the first | Exhibit D at 8 |
| 5   to the second quarter in 2010 than | |
| 6   Defendants' depiction. | |
| 7        60.     Plaintiffs attempt to rebut | 60.     Exhibit H at 2-3 |
| 8   Defendants' depiction of their decrease in | |
| 9   cash and cash equivalents with a chart of | |
| 10   "Cash & Restricted Cash." | |
| 11        61.     Both Defendants' and Plaintiffs' | 61.     Exhibit H at 1 and Exhibit C at 6; |
| 12   chart show a steep decrease in both "cash | Exhibit D at 9 |
| 13   and cash equivalents" and "Cash & | |
| 14   Restricted Cash" from January 2009 to | |
| 15   January 2010. | |
| 16   **ON THE WEBSITES' STATEMENTS** | |
| 17   **ABOUT BRADLEY COHEN'S LIFESTYLE** | |
| 18        62.     Mr. Cohen's house is located | 62.     Cohen Dep. at 82:17-83:5; |
| 19   within Bel Air and estimated to be worth at | Fishman Dep. at 82:2-7 |
| 20   least 15 million dollars – likely more than 20 | |
| 21   million dollars. | |
| 22        63.     Mr. Cohen's house is around | 63.     Cohen Dep. at 80:21-81:18 |
| 23   11,000 square feet in size. | |
| 24        64.     Defendants included a photo of | 64.     Exhibit C at 12; Exhibit D at 11 |
| 25   Mr. Cohen's house on the websites for | |
| 26   readers' reference. | |
| 27        65.     The photograph of Mr. Cohen's | 65.     Firebaugh Dep. at 90:11-91:3 |
| 28   house was taken from a website that was | |

| | |
|---|---|
| already accessible to the general public. | |
| 66.     Mr. Cohen refinanced his mortgage on the residence in 2009 to take advantage of remarkably low interest rates – around only 1% per year. | 66.     Cohen Dep. at 83:6-16 |
| 67.     Even since the economic recession that began in 2008, Cohen has made more than 1-3 million dollars per year in gross income every year. | 67.     Bradley S. Cohen Income Summary, attached as Exhibit I; Fishman Dep. at 84:11-87:7, 90:10-91:10 |
| 68.     Prior to the 2008 downturn, Cohen's annual gross income was as high as over five million dollars. | 68.     Exhibit I; Fishman Dep. at 84:11-87:7, 90:10-91:10 |
| 69.     Cohen estimates his personal net worth to be more than 50 million dollars. | 69.     Cohen Dep. at 98:6-25 |
| 70.     Cohen invests in every property managed by CAM. | 70.     Cohen Dep. at 247:4-7 |
| 71.     Cohen and his wife have given hundreds of thousands of dollars to charity, some of which came in "smaller amounts of 10,000 [or] 25,000" dollars. | 71.     Cohen Dep. at 73:9-74:12 |
| 72.     Cohen employs an undisclosed personal security detail. | 72.     Cohen Dep. at 56:9-16 |

**ON THE WEBSITES' COMPARISON OF BRADLEY COHEN TO BERNIE MADOFF**

| | |
|---|---|
| 73.     Cohen founded CAM, a real estate investment firm. | 73.     Cohen Deposition at 161:10-16 |
| 74.     CAM investors must be | 74.     Cohen Deposition at 161:10-12; |

| | |
|---|---|
| 1 | accredited investors under Securities and |
| 2 | Exchange Commission Rule 501 of |
| 3 | Regulation D. |

McGinness Deposition at 39:24-40:4

75.     Some individual securities within the companies that own property managed by CAM are sold for $100,000 each.

75.     Cohen Deposition at 243:21:-244:18; Offering Memo, attached as Exhibit J at 1

76.     Cohen's own accountant invested – and lost – $50,000 with CAM.

76.     Fishman Deposition at 103:12-104:1

77.     CAM investors identified in this litigation represent or control institutional investors, such as pension funds, real estate investment companies, and investment funds.

77.     Decl. of Westreich ¶¶ 1-2; Decl. of Bruce Batkin ¶ 3

78.     CAM's office is located in Century City, California.

78.     McGinness Deposition at 71:20-22

79.     The Websites state that Cohen has "overall responsibility for management of his firm, strategically directs investment funds."

79.     Exhibit C at 2; Exhibit D at 2

80.     CAM's investment committee makes investments by majority rule, but requires Cohen to be part of the majority vote in order to take action.

80.     Investing Committee Document, attached as Exhibit K; McGinness Dep. at 29:16-30:3

81.     CAM is headquartered on the Avenue of the Stars in Century City, California.

81.     Cohen Deposition at 171:9-10; ECF 40-4 at 29

82.     Other companies with office on the Avenue of the Stars include: 1) Creative

82.     Avenue of the Stars Composite Exhibit, attached as Exhibit L

| | |
|---|---|
| 1 | Artists Agency; 2) DLA Piper; 3) McKinsey | |
| 2 | & Company, a management consulting firm; | |
| 3 | 4) JP Morgan; 5) Moelis & Company, a | |
| 4 | bank; 6) Susman Godfrey LLP, a law firm; | |
| 5 | and others. | |

1 Artists Agency; 2) DLA Piper; 3) McKinsey
2 & Company, a management consulting firm;
3 4) JP Morgan; 5) Moelis & Company, a
4 bank; 6) Susman Godfrey LLP, a law firm;
5 and others.

6     83.    Cohen is a member of the Board     83.    FAC ¶ 13; Deposition of Cheryl
7 of Governors at Cedars Sinai Medical Center   Cohen (hereinafter "Cheryl Cohen Deposition")
8 and served on the National Board of the   12:11-15, 12:24-13:4
9 Friends of the Israeli Defense Forces.

10     84.    Cohen has made political     84.    Cohen Deposition at 177:4-
11 contributions worth tens of thousands of   178:21
12 dollars per year in the past.

13 **ON THE WEBSITES' COMMENTS**
14 **ABOUT CAM'S WEB OF COMPANIES**

15     85.    Defendants created charts     85.    Exhibit C at 7, 15; Exhibit D at
16 showing the connections between Cohen,   10, 18
17 Brandon Delf, and numerous limited-
18 liability companies on their Websites.

19     86.    The Websites describe Cohen's     86.    Deposition of Doreen Ray
20 relationship with these companies as a web,   (hereinafter Ray Deposition) at 140:9
21 describing it as complex and intricate.

22     87.    Doreen Ray, CAM's Executive     87.    Ray Dep. at 140:9
23 Vice President of asset management
24 described the structure of CAM's asset
25 management as "multilayered."

26     88.    Cohen does not know exactly     88.    Cohen Dep. at 41:6-42:5
27 how many companies for which he is an
28 officer.

| | |
|---|---|
| 89.     Cohen invests in every deal made by CAM by becoming a member of the limited-liability company used to purchase and own property. | 89.     Cohen Dep. at 97:1-24, 247:4-7 |
| 90.     The properties owned by these CAM-affiliated limited-liability companies (also known as investment vehicles) are managed by a separate company created by CAM. | 90.     Cohen Dep. at 245:21-247:3 |
| 91.     CAM receives a 20% promotional interest of the property's revenue and value for managing the property. | 91.     Cohen Dep. at 245:21-247:3 |
| 92.     CAM's promotional interest in each property that CAM manages ultimately is paid to CAM and Cohen himself. | 92.     Cohen Dep. at 247:2-3 |
| 93.     There are hundreds of limited-liability companies affiliated with Cohen and CAM executives are members. | 93.     Cohen Dep. at 245:21-247:3 |
| 94.     The limited-liability companies affiliated with CAM, which act as investment vehicles, distribute 80% of their earnings to their members. | 94.     Cohen Dep. at 245:21-247:3 |
| 95.     The remaining 20% of the limited-liability companies' earnings are paid to one of the CAM affiliated managing entities that is created to manage the investment vehicles. | 95.     Cohen Dep. at 245:21-247:3 |

| | |
|---|---|
| 96.     Cohen states that his investment structure of investment vehicles and affiliated companies is an industry standard and practice. | 96.     Cohen Dep. at 274:8-15 |

**ON CAM EMPLOYEES' KNOWLEDGE OF CAM OPERATIONS AND COHEN'S FINANCES**

| | |
|---|---|
| 97.     Doreen Ray is an executive vice president at CAM. | 97.     Ray Dep. at 142:20-22 |
| 98.     Defendants state on the website that Doreen Ray was "uncomfortable answering questions" about Cohen and his finances. | 98.     Exhibit C at 4-5; Exhibit D at 7-8 |
| 99.     Doreen Ray admitted that she was uncomfortable being asked anything about Cohen individually when testifying as the party most knowledgeable for AVIC. | 99.     Ray Dep. at 145:13-146:2 |
| 100.    Based on the context of her deposition, Ray declined to answer questions about Cohen or CAM beyond AVIC, and herself stated she was "uncomfortable" answering questions about matters other than AVIC. | 100.    Ray Dep. at 144:18-146:2 |

**ON CAM'S OCCUPANCY RATE AND OPERATING EXPENSES**

| | |
|---|---|
| 101.    CAM and its affiliated companies have occupancy rates that are below 28%. | 101.    Ray Dep. at 146:3-10; 149:17-20 |
| 102.    Some of CAM's properties are | 102.    Ray Dep. at 146:3-10; 149:17-20 |

| | |
|---|---|
| 1   totally vacant. | |
| 2       103.    CAM's individual vacant | 103.    McGinness Dep. at 79:16-17 |
| 3   properties are not generating revenue while | |
| 4   empty. | |
| 5   **ON CAM'S OTHER LITIGATION** | |
| 6       104.    Cohen denies that CAM or any of | 104.    FAC ¶ 47; Exhibit D at 34 |
| 7   its affiliated companies are known to sue | |
| 8   tenants and former tenants based on | |
| 9   unfounded accusations and greed. | |
| 10       105.    Since 2009, CAM and its | 105.    Litigation Summary, attached as |
| 11   affiliated entities have commenced six | Exhibit M; Cohen Dep. at 198:12-201:1 |
| 12   lawsuits against tenants. | |
| 13       106.    CAM and its affiliated | 106.    Exhibit M; Cohen Dep. at |
| 14   companies' tenant litigation has been over | 198:12-201:1 |
| 15   spaces as small as 12,500 square feet, and as | |
| 16   large as 68,779 square feet. | |
| 17       107.    CAM's report discloses only | 107.    Exhibit M; Cohen Dep. at |
| 18   landlord-tenant litigation CAM has filed as a | 198:12-201:1 |
| 19   plaintiff, since 2009. | |
| 20       108.    CAM has initiated lawsuits for | 108.    FAC; *Continental Industrial* |
| 21   matters other than landlord-tenant disputes. | *Capital v. The Davey Tree Expert Co.*, attached |
| 22   | as Exhibit N |
| 23       109.    The lawsuit brought by AVIC – | 109.    FAC at ¶ 28, 31; Hansen Dep. at |
| 24   an affiliate of CAM – is on appeal. | 110:1-6 |
| 25   **ON STATEMENTS ON THE WEBSITES** | |
| 26   **REGARDING BRADLEY COHEN'S** | |
| 27   **CRIMINAL HISTORY** | |
| 28       110.    Defendants' website states that | 110.    Exhibit D at 25 |

| | |
|---|---|
| 1  Defendants' investigation has revealed "a | |
| 2  criminal history involving fraud and money | |
| 3  laundering for *a man with the same name* | |
| 4  *and same approximate age*, in the real estate | |
| 5  industry." (emphasis in original) | |
| 6      111.   Defendants state on the websites | 111.   Exhibit D at 25 |
| 7  that both Cohen and Brad S. Cohen have | |
| 8  succeeded in the real estate industry, are | |
| 9  from the same geographic area, have the | |
| 10  same name, and are about the same age. | |
| 11      112.   The portion of the bradley-cohen | 112.   Exhibit D at 37-46 |
| 12  website contained news stories from the | |
| 13  early 1990s and a full copy of the United | |
| 14  States Court of Appeals for the Third | |
| 15  Circuit's order in the *Banks v. Wolk* case, | |
| 16  918 F.2d 418 (3d Cir. 1990), in which a man | |
| 17  named Brad Cohen was an appellee on | |
| 18  claims including RICO (18 U.S.C. § 1961- | |
| 19  1968). | |
| 20      113.   The content regarding a Bradley | 113.   Exhibit D at 26-33, 37-46 |
| 21  Cohen's RICO case and convictions on the | |
| 22  website constitutes either a wholesale | |
| 23  republication of a judicial opinion or articles | |
| 24  about judicial activities. | |
| 25  **ON THE WEBSITE'S STATEMENTS** | |
| 26  **REGARDING CAM'S REPUTATION** | |
| 27      114.   Defendants' statements about | 114.   Exhibit C |
| 28  CAM refer to the investing services it | |

| | |
|---|---|
| provides. | |
| **ON REPUTATIONAL HARM TO** | |
| **PLAINTIFFS** | |
| 115.    CAM did a "big deal" with New York Life, but does not know whether the two parties will do another deal. | 115.    Cohen Dep. at 114, 147 |
| 116.    As to damages from the websites, CAM's employees state only that they do not know if the phone does not ring. | 116.    Ray Dep. at 87:22-88:6; McGinness Dep. at 62:24-63:5; Cohen Dep. at 114:12-14 |
| 117.    CAM is on track to have a profitable year in 2013, and potentially its best year yet. | 117.    McGinness Dep. at 99:22-100:6 |
| 118.    More CAM employees than ever before are earning at least $150,000 per year. | 118.    McGinness Dep. at 50:1-12; Exhibit G |
| 119.    Cohen continues to earn more than $1.3 million per year in gross income. | 119.    Exhibit I |
| **ON PLAINTIFFS' FALSE LIGHT CLAIMS** | |
| 120.    Plaintiffs seek only presumed and general damages. | 120.    Exhibit E at 3, 4:13-14, 5; Exhibit F at 4:12-13, 5-6 |
| 121.    CAM's alleged loss of reputation is based on Cohen's assumptions. | 121.    Cohen Dep. at 113:18-114:22 |
| 122.    Cohen's general damages are based on his sleeping patterns. | 122.    Cohen Dep. at 42:19-43:9, 44:14-45:24, 119:4-24; Expert Report of Dr. Saul Faerstein, Exhibit P, at 3 |
| 123.    Cohen has other stressors in his life, ranging from managing CAM to the anxiety he experiences from his family life. | 123.    Rebuttal Expert Report of Dr. Lewis Etcoff, Exhibit O |

| | |
|---|---|
| **ON PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS** | |
| 124.    Cohen seeks to hold Defendants liable for publishing words on the Internet. | 124.    Cohen Dep. at 272:6-8; FAC ¶¶ 9-12 |
| 125.    Since discovering the website, Cohen has had changes in his sleeping pattern and unusual dreams involving Ross Hansen. | 125.    Exhibit P at 3; Mr. Cohen's dream description email, attached as Exhibit Q; Faerstein Dep. at 154:20-155:23 |
| 126.    Cohen has lost approximately 30 pounds. | 126.    Cohen Dep. 120:6-7; Fishman Dep. 38:24-39:2 |
| 127.    Cohen's anxiety with the website has not manifested as nausea or any other physical form. | 127.    Cohen Dep. 42:19-43:9, 44:14-45:24, 119:4-24, 120:17-23; *see* Exhibit P at 3-4 |
| 128.    Plaintiffs' expert witness says Cohen's distress appears to be his own state of mind. | 128.    Exhibit P at 3 |
| 129.    According to Plaintiffs' expert witness, the websites have become an "obsession" of Cohen's, checking the Internet "daily" and becoming "consumed by the lawsuit." | 129.    Exhibit P at 3 |
| 130.    Cohen spends "countless hours working on the case, sending articles and notes to his attorney, reviewing evidence and deposition transcripts," according to Plaintiffs' expert witness, time which the report says Cohen believes "could be spent | 130.    Exhibit P at 3 |

| | |
|---|---|
| in more productive activities." | |
| **ON DEFENDANTS' KNOWLEDGE OF** | |
| **PLAINTIFFS' BUSINESS** | |
| **RELATIONSHIPS** | |
| 131.    Defendants did not directly or indirectly contact any existing or potential business contact of Cohen's or CAM's. | 131.    Hansen Dep. at 35:14-36:1; Firebaugh Dep. at 73:13-24; 78:8-18; 87:4-88:11 |
| 132.    Defendants published their concerns about Plaintiffs on the Websites, available on the Internet. | 132.    Hansen Dep. at 35:14-36:1; Firebaugh Dep. at 73:13-24; 78:8-18; 87:4-88:1 |
| 133.    Hansen intended to relate his own experiences and feelings about Plaintiffs through the websites. | 133.    Hansen Dep. at 173:6-10 |
| 134.    The funds Jeffrey Stern invested were reduced by an amount Stern is uncertain of within several million dollars, and for reasons he declined to share. | 134.    Stern Dep. at 47:11-48:25, 50:10-15, 51:15-52:4, 52:9-53:17, 55:15-56:10 |
| 135.    CAM's claimed losses are based on relationships that either never came into being, such as the Ohio State Teachers, or which were consummated, but may or may not continue in the future, such as New York Life. | 135.    Cohen Dep. at 114:8-15 |
| 136.    The economic damages allegedly caused by Defendants were losses to CAM, rather than a direct loss to Cohen himself. | 136.    Cohen Dep. at 114:8-15 |

1 | Dated: October 30, 2013

Respectfully submitted,

2

/s/ Ronald D. Green
Marc J. Randazza, Esq., NV Bar #12265
3
Ronald D. Green, Esq., NV Bar #7360
J. Malcolm DeVoy, Esq., NV Bar #11950
4
RANDAZZA LEGAL GROUP
3625 South Town Center Drive, Suite 150
5
Las Vegas, NV 89135
(702) 420-2001
6
(702) 420-2003 fax
ecf@randazza.com
7

Dean G. von Kallenbach, Esq., admitted pro hac vice
8
YOUNG deNORMANDIE, P.C.
Second & Seneca Building
9
1191 Second Avenue, Suite 1901
Seattle, WA 98101
10
 (206) 805-2720
 (206) 623-6923 fax
11
dgvk@ydnlaw.com

12
John P. Aldrich, Esq. NV Bar #6877
ALDRICH LAW FIRM, LTD.
13
1601 S. Rainbow Blvd., Suite 160
Las Vegas, Nevada 89146
14
(702) 853-5490
(702) 227-1975
15
jaldrich@johnaldrichlawfirm.com

16
Allen Lichtenstein, Esq., NV Bar #3992
3315 Russell Road, No. 222
17
Las Vegas, NV 89120
(702) 433-2666
18
allaw@lvcoxmail.com

19
Attorneys for Defendants,
20
ROSS B. HANSEN, NORTHWEST TERRITORIAL
MINT, L.L.C. and STEVEN FIREBAUGH
21

22

23

24

25

26

27

28