1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

BRADLEY STEPHEN COHEN, et al.,

Case No. 2:12-cv-01401-JCM-PAL

8

Plaintiffs,

ORDER

9

v.

(Mot Exclude – Dkt. #150)

ROSS B. HANSEN, et al.,

10

11

Defendants.

12    The court conducted a hearing on Defendants' Motion to Exclude Evidence Regarding

13    Plaintiffs' Actual Damages (Dkt. #150) on April 22, 2014.  Robert Mitchell and Sara Deutsch

14    appeared on behalf of the Plaintiffs.  John Aldrich appeared in person and Dean von Kallenbach

15    appeared telephonically on behalf of the Defendants.  The court has considered the Motion,

16    Plaintiffs' Opposition (Dkt. #153), Defendants' Reply (Dkt. #156), Defendants' Sur-Reply (Dkt.

17    #174) and Plaintiffs' Motion to Strike Defendants' Sur-Reply (Dkt. #175), as well as the

18    arguments of counsel at the hearing.

19                                              **BACKGROUND**

20    The Complaint (Dkt. #1) in this case was filed August 8, 2012.  A First Amended

21    Complaint (Dkt. #40) ("FAC") was filed March 4, 2013.  Plaintiff Bradley Stephen Cohen

22    ("Cohen") is a California resident and the President and Chief Executive Officer of Cohen Asset

23    Management ("CAM"), a privately held California corporation.  FAC (Dkt. #40), ¶¶1-2.  CAM

24    acquires finances, operates, and is involved with the disposition of industrial properties across

25    the United States. *Id*. ¶2.

26    Defendant Ross B. Hansen ("Hansen") is a resident of the State of Washington, and a

27    part-time resident of Nevada.  *Id*. ¶3.  Defendant Northwest Territorial Mint, Inc., LLC ("NW

28

1

Mint") is a Washington limited liability corporation. *Id*. ¶4. Defendant Steven Earl Firebauch is a resident of Nevada. *Id*.

The Complaint and FAC arise out of allegations Plaintiffs discovered allegedly defamatory and malicious websites containing intentionally false and disparaging publications about Plaintiffs in April 2012. *Id*. ¶9. Among other things, the websites compared Plaintiffs to Bernie Madoff and displayed a picture with Plaintiff Cohen allegedly juxtaposed with a picture of Madoff. *Id*. ¶12. The websites contained allegedly false and scandalous allegations against Plaintiff CAM.

Plaintiffs allege that Defendants secretly created and established the websites and intended to conceal any involvement with the websites' creation. *Id*. ¶29. The websites were allegedly created by the Defendants in retaliation for two lawsuits regarding business leases, which Defendants lost, in Washington State Court. *Id*. ¶31.

Based on these allegations, Plaintiffs have asserted claims for: (1) defamation and defamation per se; (2) invasion of privacy/false light; (3) intentional infliction of emotional distress; (4) intentional interference with future expected business; and (5) injunctive relief.

Discovery has been contentious, and the court has decided many, many discovery disputes. Both sides have been ordered to produce or supplement discovery they have resisted providing. In the current motion, Defendants seek an order excluding evidence that Plaintiffs suffered any actual or special damages based on Defendants' discovery violations, and misrepresentations to opposing counsel and the court concerning their damages claims.

Defendants served interrogatories and requests for production of documents on Defendants Cohen and CAM April 30, 2013. Defendants' written discovery requested that Plaintiffs identify their bases for pleading damages in excess of the jurisdictional threshold of $75,000. To each of the Defendants' discovery requests, the Plaintiffs replied that they "are seeking general and presumed damages (in addition to punitive damages) in this litigation, and have not alleged, nor are they required to allege, specific instances of actual damages." Plaintiffs refused to produce financial information or information regarding specific monetary damages

1    objecting that Defendants' discovery requests were overly broad, unduly burdensome, vague,

2    irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.

3    On June 14, 2013, Defendants sent Plaintiffs' counsel a lengthy letter identifying

4    deficiencies in their discovery responses, including the Plaintiffs' failure and refusal to provide

5    evidence of actual damages.   A copy of this correspondence from defense counsel von

6    Kallenbach to Plaintiffs' counsel Mitchell is attached as Exhibit "E" to Defendants' motion.

7    Plaintiffs responded June 21, 2013, by letter refusing to supplement their discovery responses or

8    provide Plaintiffs with any information regarding actual damages.   A copy of this

9    correspondence is attached as Exhibit "F" to the motion.

10   When the parties were unable to resolve this and other discovery disputes, a Joint

11   Discovery Report (Dkt. #84) was submitted to the court July 10, 2013.[1]  At a hearing conducted

12   July 23, 2013, the court addressed the parties' disputes concerning the Plaintiffs' failure to

13   provide evidence of monetary damages.  Anthony Glassman appeared on behalf of the Plaintiffs

14   and argued at length that the Plaintiffs did not intend to introduce any "testimony whatsoever

15   with respect to any specific sum of money or sums of money that were lost" at trial.  The court

16   specifically inquired of Mr. Glassman how Plaintiffs estimated their damages at $100 million as

17   stated in their discovery responses.  Mr. Glassman responded that the estimate was based upon

18   his "experience as a media lawyer," and an award of $40 million that Steven Wynn had recently

19   been awarded in an unrelated case.  These arguments were made in support of Plaintiffs' position

20   that Defendants' discovery requests were overly broad, and irrelevant because Plaintiffs were not

21   required to plead or prove any actual damages.

22   At the hearing, the court directed Plaintiffs' counsel to produce documents supporting all

23   of their theories regarding damages and entered a written Order (Dkt. #91) requiring the

24   Plaintiffs to serve supplemental written responses to certain of the interrogatories and requests

25

26   [1] The court has been conducting regular scheduling and dispute resolution conferences in this
     case since January 8, 2013, in addition to hearings on motions to compel.  The court eventually
27   required the parties to submit their discovery disputes and their respective  positions concerning
     those disputes in a joint status report, rather than requiring formal briefing in the form of a
28   motion, response and reply to avoid the delay entailed in the briefing process.

1   for production of documents no later than August 6, 2013.  The written order warned Plaintiffs

2   that they would be precluded from using any undisclosed evidence or documents responsive to

3   the discovery requests compelled in this order at trial, in motion practice, at a hearing, or for any

4   other purpose.  The court denied Defendants' request to compel further responses to other

5   discovery requests based on Plaintiffs' counsel's repeated representations that they did not have,

6   were not alleging, and knew of no actual damages.  However, on November 25, 2013, Plaintiffs

7   filed a Response to Defendants' Motion for Summary Judgment (Dkt. #135) which argued, for

8   the first time, that Plaintiffs suffered actual damages.  The response asserted that "actual

9   damages" should be called "special damages," and therefore summary judgment should not be

10  entered against them even though Plaintiffs had no evidence of quantifiable economic harm.

11          Under these circumstances, Defendants ask the court for preclusion sanctions for

12  Plaintiffs' bad faith and wilful refusal to produce evidence of economic damages in discovery.

13  Defendants argue that Plaintiffs cannot rely on the existence of actual damages in opposing the

14  motion for summary judgment, while steadfastly refusing to provide Defendants with discovery

15  of their damages, and representing to the court that there were no actual damages.  Defendants

16  have been prejudiced by the Plaintiffs' failure to provide evidence regarding the computation of

17  their damages, and supporting documents which deprive Defendants' counsel of addressing the

18  merits of Plaintiffs' alleged economic losses during discovery.  The only way this prejudice

19  could be potentially cured is to re-open discovery.  However, because the first time Plaintiffs

20  claimed they had suffered actual damages was only after the close of discovery, and in response

21  to Defendants' motion for summary judgment, this would reward Plaintiffs for their intentional

22  disregard of their discovery obligations.  A more effective and efficient sanction is therefore

23  entry of an order precluding Plaintiffs from making any reference to any actual damages and

24  pecuniary losses during trial.

25          Finally, Defendants argue that they will be profoundly prejudiced by Plaintiffs' attempt

26  to rely on the existence of actual damages while not providing information about them during

27  discovery.  Plaintiffs' perversion of the discovery process by withholding evidence throughout

28

4

discovery has thwarted Plaintiffs' ability to ascertain facts in dispute, clarify the issues, and avoid surprise at trial—the purpose of the discovery rules.

Plaintiffs oppose the motion arguing that their initial complaint alleged presumed, actual, consequential, general, special and punitive damages, and sought injunction relief in addition to attorney's fees and costs.  The FAC also sought "all damages" including presumed, actual, consequential, general and punitive damages in addition to injunction relief and attorney's fees and costs.  Plaintiff's opposition asks the court to deny the motion arguing that this is not an "extreme case" that warrants the harsh sanction of exclusion, especially when it amounts to dismissal of a claim, citing *R&R Sails, Inc. v. Insurance Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2002).  Defendants argue that courts have excluded of evidence of damages only in extreme situations in which the Plaintiff did not disclose its damages until shortly before trial or well after the close of discovery.  Defendants maintain that they timely disclosed evidence of special damages during the discovery process.

The opposition maintains that actual damages and special damages are occasionally used interchangeably "as was inadvertently done in this case by both parties."  However, in Nevada, special damages are a species of compensatory damages.  Compensatory or actual damages include general damages for loss of reputation, shame, mortification and hurt feelings, and special damages which are quantifiable monetary losses that flow directly from the injury to reputation caused by the defamation, for example, loss of business.  General damages are presumed and emotional damages do not require objective evidence and may be based solely on testimony.  These types of damages are not amenable to calculation and are left to the trier of fact to determine.

Under Nevada law, Plaintiffs argue, the jury has wide latitude in awarding special damages which do not require an injured person to prove injury with mathematical exactitude. Plaintiffs disclosed their special damages in discovery in the form of search engine optimization expenses incurred in attempting to mitigate the harm caused by the websites and produced a summary of these expenses totaling $58,133.92.  Plaintiffs also stated in Cohen's answers to interrogatories that Cohen's damages exceeded $100 million over a twenty-year period, and

1   supplemented these responses as ordered.  Plaintiffs also disclosed Mr. Stern's declaration
2   attesting he invested several million dollars less because of Defendants' websites, and
3   Defendants deposed Mr. Stern.  Finally, Plaintiffs filed Mr. Cohen's declaration who attested he
4   incurred over $100,000, not including attorney's fees spent on this litigation, in expenses to
5   uncover the source of the websites and "dealing with the problems created by the websites."  In
6   supplemental answers to interrogatories CAM produced an illustration of income generated by
7   investment offerings from 2010 to 2013, with supporting documentation showing a total income
8   extrapolated over twenty years of $158,477.077.00.  Defendants deposed Cohen and CAM's
9   CFO, Scott McGuinness, but did not ask them about the illustration.  However, defense counsel
10  did ask Cohen about the search engine optimization expenses.

11      Plaintiffs assert that Defendants' motion selectively quotes a few discovery responses and
12  arguments of counsel to support their preclusion sanction arguments.  Public policy favors
13  disposition of cases on their merits, and the court "must not decide this case on technicalities,
14  semantics, or arguments of counsel, which are not evidence."  Opposition (Dkt. #153), 9:28-
15  10:1.

16      Plaintiffs maintain that the arguments of counsel at the July 23, 2013 hearing were not
17  evidence, and in effect, "taken out of context" because they referred to a black binder containing
18  financial records which included appraisals, evaluation and mortgage documents that Plaintiffs
19  were waiting to produce provided defense counsel would agree to an "attorney's eyes only"
20  protective order provision.  At the hearing, the court denied this request.  When the court
21  inquired what documents Plaintiffs had produced to defense counsel, Plaintiffs' counsel stated a
22  host of declarations from investors in CAM properties, including Mr. Stern's declaration, had
23  been produced and went on to explain that Plaintiffs' general and presumed damages, including
24  emotional distress, would be supported by Mr. Cohen's testimony and a psychiatrist.  Plaintiffs'
25  counsel also explained that damages to Plaintiffs' reputation would be supported by testimony
26  from Cohen and CAM representatives "about the magnitude of Plaintiffs' business, income,
27  equities and properties, fee structure, etc." although a specific sum would not be presented
28  because "such damages are incalculable and are presumed."

6

1    Under these circumstances, Plaintiffs argue, they have complied with their discovery

2    obligations and the court's orders.  Rule 37(c)(1) does not apply because Plaintiffs produced

3    information regarding their special damages and Defendants have not identified what untimely

4    disclosed evidence they want excluded.   Plaintiffs maintain that Defendants' motion is

5    essentially a premature motion in limine, and that Defendants are requesting resolution of a

6    factual dispute and that the court weigh evidence like the sufficiency of Mr. Stern's reduced

7    investment which is not an appropriate purpose for a motion in limine.  The court should defer

8    evidentiary rulings until trial so questions of foundation, relevancy and potential prejudice are

9    resolved in proper context when the court is in a better situation to assess the value and utility of

10   the evidence.

11                                         **DISCUSSION**

12    Defendants served Plaintiffs with routine contention interrogatories and requests for

13   production of documents seeking discovery of Plaintiffs' damages contentions and documents

14   tending to support or refute those contentions.  Defendants' written discovery was served on

15   Defendants Cohen and CAM April 30, 2013.  Among other things, the discovery requests sought

16   Plaintiffs' bases for pleading damages in excess of the jurisdictional threshold of $75,000.

17   Plaintiffs responded to these requests by objecting on various grounds including that the

18   information requested was overly broad, unduly burdensome, vague, irrelevant, and not

19   reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' answers to the

20   interrogatories indicated that they were seeking "general and presumed damages" but did not

21   allege "specific instances of actual damage."

22    In an Answer to Interrogatory No. 1, Cohen indicated that he "incurred many thousands

23   of dollars" in search engine optimization expenses to mitigate the harm caused by the

24   Defendants.  In Answer to Interrogatory No. 2(b), Cohen supported his allegation in Paragraph 7

25   of his FAC that his potential damages exceeded the jurisdictional minimum of $75,000 by

26   responding that he was seeking "general and presumed damages" and did not allege "specific

27   instances of actual damage."  The same answer was given to support his FAC allegations about

28   damages to his reputation.  He answered Interrogatory No. 6(b) which asked for the bases for

supporting the allegation in Paragraph 73 of his FAC that Defendants' invasion of privacy and false light caused him damages "in excess of $100 million."  The answer did not provide any detail or explanation concerning how he calculated this loss.  He gave a similar answer supporting Interrogatory No. 7 which asked him the bases of his contention in Paragraph 82 of his FAC that Defendants interfered with his business dealings and caused parties to be hesitant to do business with Plaintiffs.  In Answer to Interrogatory No. 7(b) Cohen indicated that he valued the damage suffered in this category "to be in excess of $100 million."  Again, he failed to provide detail concerning how he calculated this loss and did not differentiate whether the $100 million in damages claimed in answer to Interrogatory 6(b) was the same as or cumulative to the damages claimed in Answer to Interrogatory No. 7(b).

Counsel for Defendants sent a detailed letter to Plaintiffs' counsel June 14, 2013, outlining why Defendants' counsel believed the responses were deficient and required immediate supplementation.  Plaintiffs' counsel responded in a letter dated June 21, 2013.  Plaintiffs' counsel took the position that defense counsel's letter "wrongly assumes that in responding to interrogatories and requests for production of documents regarding the damages our client has sustained as a result of your client's defamatory websites, our obligation is to provide the kind of documentation and calculations you would normally be required to establish the extent of damages incurred." (Dkt. #150), Exhibit "F".  The letter went on to explain in detail Plaintiffs' position that Plaintiffs had no duty to plead or prove special damages and no proof of calculation of damages was required for Plaintiffs' defamation and defamation per se claims.

With respect to damages on the remaining claims, Plaintiffs claimed to have produced all relevant documents.  The letter indicated that Mr. Cohen had no responsive documents regarding his emotional distress caused by the offending websites, other than an anticipated psychiatric expert report.  The letter also indicated that Mr. Cohen had no responsive documents relating to damages stemming from the invasion of his privacy and being portrayed in a false light.  With respect to the claim for intentional interference of prospective business advantage, Plaintiffs claimed they had already produced the only responsive documents relating to this claim.  These documents consisted of declarations from existing investors, one of whom stated he invested less

1  with Plaintiffs because he saw the websites.  The letter indicated that approximately 100 pages of

2  responsive documents had been produced which included the declarations and represented that

3  "other than those investors who volunteered to prepare sworn declarations, it is virtually

4  impossible to ascertain what other investors chose to invest less or cease doing business with

5  Plaintiffs in response to the websites."

6       When the parties were unable to resolve their disputes without the court's intervention,

7  the court heard argument of the parties disputes at the July 23, 2013 hearing.  At the July 23,

8  2013 hearing, defense counsel requested an order compelling the Defendants to produce

9  financial status and performance information, including copies of their bank account statements,

10  brokerage account statements, commodity account statement, tax returns and financial

11  statements, including profit and loss statements and balance sheets.  Defense counsel represented

12  that the discovery requests directed to obtain this information was taken directly from discovery

13  responses received from Plaintiffs, *i.e.,* the exact information that Plaintiffs were seeking from

14  Defendants.  Plaintiffs had not produced any information responsive to these requests, but

15  offered to produce two types of information:  Plaintiffs' opinions regarding the value of the

16  commercial properties in which CAM has an ownership interest, and  redacted appraisals for the

17  majority of the properties.  None of these documents, Defendants argued, were adequate to

18  explore the truth or falsity of statements on the website about CAM's financial condition such as

19  operating losses, tenant occupancy rates, lines of credit, complex financial transactions and

20  loans.  Mr. Glassman, counsel for Plaintiffs, argued at the hearing that Plaintiffs had a binder

21  containing appraisals for each of the properties owned by CAM that contained all the

22  information Defendants needed to show that the Plaintiffs were not operating a Ponzi scheme as

23  the website suggested, and that the properties had a loan-to-value ratio of fifty percent.

24       Defendants sought discovery of Plaintiffs' financial condition and status because

25  Plaintiffs alleged they were defamed by statements on the websites that CAM's financial empire

26  was crumbling, under financial distress, and had operating losses that were continuing to mount

27  as the company lost tenants and occupancy rates on some of the properties dropped as low as

28  twenty-eight percent.  Defendants believed they were entitled to information of Defendants'

1    financial condition to prove these statements were true as a complete defense to Plaintiffs'

2    defamation claims.  Additionally, Defendants sought financial documents to evaluate Plaintiffs'

3    damages claims.

4           Plaintiffs steadfastly resisted discovery of their financial status arguing it was not relevant

5    because Plaintiffs were not required to allege or prove actual or specific monetary damages for

6    their defamation and defamation per se claims because the only damages they suffered were

7    presumed damages for which a monetary calculation was impossible.  Plaintiffs repeatedly

8    represented to the court and opposing counsel that they had produced all responsive documents

9    supporting their damages claims for emotional distress and intentional interference with

10   prospective business advantage.  Specifically, Plaintiffs' counsel represented that Mr. Cohen

11   would testify about his emotional distress, and an expert psychiatrist would also testify.  With

12   respect to the intentional interference with prospective business advantage, Plaintiffs' counsel

13   represented that the declarations from existing investors that had been produced, were the only

14   evidence supporting this claim.  Plaintiffs' counsel also represented that Plaintiffs had no

15   documents responsive to damages for invasion of privacy and being portrayed in a false light.

16          At the July 23, 2013 hearing, Plaintiffs' counsel said all responsive documents had been

17   produced, or would be produced, in the form of a binder counsel brought with him to court if the

18   court would order the documents could only be reviewed on an "attorney's eyes only" basis.

19   Plaintiffs' counsel argued at length that Mr. Hansen was unlikely to abide by any order the court

20   had imposed treating these documents as confidential because of his history of allegedly showing

21   contempt for court orders, and personal characteristics and background.  The court denied the

22   request to amend the protective order governing confidentiality to include an "attorney's eyes

23   only" provision because the parties had negotiated and presented the court with a stipulated

24   protective order that did not contain such a provision, and the court was unwilling to presume

25   that the Defendants would violate their obligations under the protective order.

26          The court peppered Mr. Glassman with a number of questions.  The court's initial

27   concern was that Plaintiffs' discovery responses contained a battery of boilerplate objections

28   which concluded with language to the effect that, without waiving these objections the Plaintiffs

would produce all non-privileged documents.  No privilege log was served and it was impossible to tell from the way the responses were worded whether the objections were made "for the record" but all responsive documents had been produced, or whether responsive documents had been withheld on relevance, privilege, or a multiple other objections grounds.  The court asked what documents had been produced to defense counsel up until the time of the hearing.  Mr. Glassman responded that Plaintiffs had "produced a host of declarations from investors and Cohen Asset Management Properties."  Transcript of Hearing (Dkt. #90) 10:4-12.  The court then asked whether Plaintiffs had provided "any other documents that support your liability or damages theory of the case?"  *Id.*  13-15. Mr. Glassman responded that additional documents had not been produced because defense counsel would not accept the "kind of stipulation that we want" because the client was concerned about what Mr. Hansen would do with the information provided.  *Id.* 13-22.

The court was candidly frustrated with Mr. Glassman's verbal gymnastics and evasive responses to the court's inquiries.  More than once the court asked Mr. Glassman to simply answer yes or no whether any documents other than declarations had been produced supporting Plaintiffs' liability and damages claims.  Mr. Glassman responded "a small amount" but that Plaintiffs were prepared to produce additional responsive documents as soon as a stipulation and order preventing Mr. Hansen from reviewing them was entered.

The court specifically inquired whether the documents in the binder which Mr. Glassman described as "very, very extensive" for each property were the "only documents that you intend to rely upon to support your claims of your client's damages arising out of the actions that are the subject of this complaint?"  *Id.*  14:14-19.  Mr. Glassman asked that the court repeat the question. *Id.*  20.  The court did: "Are these the only documents you intend to rely upon to support all of the complaint allegations you made in this case, including your damages?"  *Id.*  21-23.  Mr. Glassman responded that a psychiatrist would testify about Mr. Cohen's emotional distress as would Mr. Cohen, and that Plaintiffs would probably have an expert testify to the various ways Mr. Cohen earned money and fees "but there will be no testimony whatsoever with respect to any specific sum of money or sums of money that were lost as a consequence."  *Id.*  14:24-15:7.

11

This caused the court to ask how Mr. Cohen had come up with the $100 million damage amount claimed in Mr. Cohen's discovery responses.  Mr. Glassman responded that "we came up with it based upon my experience as a media lawyer for approximately forty years; other judgments; based on the fact that Steve Wynn , , , was awarded $40 million . . . the only damages that were presented to the jury in the Wynn case recently were presumed damages." *Id.* 15:8-18.

The court was not satisfied with this response and pointed out that the way that Plaintiffs' discovery responses were worded suggested that Plaintiffs had a way of calculating the $100 million estimate beyond an argument that could be made to the jury. *Id*. 19-23.  Mr. Glassman indicated that the damages claimed were personal to Mr. Cohen and based on the fact that he is known in many business communities and cities throughout the United States. *Id*. 15:24-16. The court again asked what documents the Plaintiffs intended to rely upon to support allegations both on liability and damages because the other side was entitled to that information. *Id*. 16:5-9. Mr. Glassman again responded that all of the documents were either in the binder, consisted of Mr. Cohen's testimony, and that Plaintiffs' damages were "obviously impossible to calculate." *Id*. 10-25.  Mr. Glassman acknowledged that this sounded unusual that a jury would have the opportunity to make an award of damages based on a presumption. *Id*. 17:20-22.

The court repeatedly questioned Mr. Glassman to test his arguments that Plaintiffs simply had no damages that were capable of mathematical computation and that the only damages Plaintiffs were claiming were presumed.  The court finally tested Mr. Glassman's representations by asking whether the Plaintiffs could "live with an order" precluding Plaintiffs from introducing any evidence of actual damages. *Id*. 19:10-18.  Mr. Glassman again responded, "I know of no actual damages." *Id*. 17-20.  Mr. Glassman went on to make statements that the Plaintiffs had "no way of knowing, it was impossible to calculate the exact amount of money" the Defendants' conduct caused, and that there was no way to calculate the Plaintiffs lost "X number of dollars" as a result of the Defendants' conduct.  These arguments were not, as the opposition to this motion claims, limited to the defamation or defamation per se claims.  Mr. Glassman assured the court that he was "not trying to play hide the ball," (*Id*. 22:9-10) and that he would provide

"every bit of information that we have that supports a damage claim." *Id.* 15-16.  Mr. Glassman continued to represent that the only damages the Plaintiffs were seeking in this case were presumed damages.  The court made it clear:

> Nobody is telling you that you cannot present a presumed damages case.  What I am trying to tell you loud and clear is that if you have documents that support your liability theories or your damages theories, you're required to produce them.

*Id.* 25:11-15.

Counsel for Defendants had the last word in rebuttal and used it to point out that the complaint allegations contain claims that require proof of actual damages, not presumed damages.  *Id.* 26:19-25.

With repeated assurances from Plaintiffs' counsel that the only damages claimed were presumed damages, or damages for which a monetary calculation was impossible, the court only compelled the Plaintiffs to supplement certain discovery responses that were ambiguous.  The supplementation was ordered precisely to require the Plaintiffs to plainly specify that the only damages claimed in this case were presumed damages and that Plaintiffs were not claiming any damages that were capable of mathematical calculation.  The court entered a written Order (Dkt. #91) following the hearing which specifically warned the Plaintiffs that failure to comply with their discovery obligations and the court's order would result in preclusion sanctions.

## I.   Applicable Law.

### A.   Rule 26(a).

Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure requires parties to make initial disclosures "without awaiting a discovery request."  Rule 26(a)(1)(A)(iii) requires a plaintiff to provide "a computation of each category of damages claim" and make documents or other evidentiary material on which the computation was based available for inspection and copying.  According to the advisory committee note to Rule 26, this requirement is "the functional equivalent of a standing Request for Production under Rule 34."  Fed. R. Civ. P. 26 advisory committee's note to 1993 Amendment.

Rule 26(e)(1) requires a party making initial disclosures to "supplement or correct its disclosures or responses . . . in a timely manner if the party learns that in some material respect

the disclosure or response is incomplete or incorrect, and that the additional or corrective information has not otherwise been known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).  The advisory committee's note to the 1993 Amendment indicate that "a major purpose" of the Rule 26(a) initial disclosure requirement "is to accelerate the exchange of basic information about the case and to eliminate the paperwork involved in requesting such information."  *Id.*

A party who fails to comply with its initial disclosure requirements and duty to timely supplement or correct disclosures or responses may not use any information not disclosed or supplemented "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 27(c)(1).  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001).  A party facing sanctions under Rule 37(c)(1) for failing to make its initial disclosures or timely supplement or correct incomplete or incorrect responses bears the burden of establishing that its failure to disclose the required information was substantially justified or is harmless.  *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008).

**B.      Rule 16(f)**.

Rule 16(f) of the Federal Rules of Civil Procedure authorizes the court to impose sanctions on a party's motion or on its own motion, including any sanction authorized by Rule 37(b)(2)(A)(ii-vii), if a party or its attorney fails to obey a scheduling order or other pretrial order.  *Id.*  Sanctions for failure to obey a discovery order include, among other things, striking a party's pleadings in whole or in part or rendering a default judgment against the disobedient party.  Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).

Rule 16(f) gives the court broad discretion to sanction attorneys and parties who fail to comply with reasonable case management orders of the court so that they "fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial."  *Matter of Sanctions of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1994) (en banc).  The Ninth Circuit has held that the purpose of Rule 16 is "to encourage forceful judicial management."  *Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986); *see also* Fed. R. Civ. P. 16 advisory committee's

note (stating "explicit reference to sanctions reinforces the rule's intention to encourage forceful judicial management.")  Violations of Rule 16 are neither technical nor trivial.  *Martin Family Trust v. Heco-Nostalgia Enterprises, Co.,* 186 F.R.D. 601, 603 (E.D. Ca. 1999).  Rule 16 is critical to the court's management of its docket and prevents unnecessary delays in adjudicating cases.  *Id.*  The Ninth Circuit has emphasized that a case management order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal quotations and citations omitted).  Disregard of a court order undermines the court's ability to control its docket and rewards the indolent and cavalier.  *Id.*

Violations of a scheduling order may result in sanctions including dismissal under Rule 37(b)(2)(C).  *Dreith v. Nu Image, Inc.,* 648 F.3d 779, 787 (9th Cir. 2011) (internal quotations omitted).  The goal of Rule 16 is to get cases decided on the merits.  *In re: Phenylpropnolamine (PPA) Products Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).  Rule 16(f) "puts teeth into these objectives by permitting the judge to make such orders as are just for a party's failure to obey a scheduling or pretrial order, including dismissal."  *Id.*

## C.    Rule 37.

Rule 37 of the Federal Rules of Civil Procedure authorizes a wide range of sanctions for a party's failure to engage in discovery.  The court has the authority under Rule 37(b) to impose litigation-ending sanctions.  The Rule authorizes sanctions for a party's failure to make disclosures or cooperate in discovery. Rule 37(c)(1) provides, in relevant part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1). Rule 37 "gives teeth" to the disclosure requirements of Rule 26 by forbidding the use at trial of any information that is not properly disclosed.  *Goodman v. Staples The Office Superstore,* 644 F.3d 817, 827 (9th Cir.2011).  Rule 37(c)(1) is a "self-executing, automatic" sanction designed to provide a strong inducement for disclosure.  *Id.*  The 1993 amendments to Rule 37 were "a recognized broadening of the sanctioning power."  *Yeti by*

*Molly*, 259 F.3d at 1106.   Rule 37(a)(3) explicitly provides that an evasive or incomplete disclosure, answer, or response to a discovery obligation "is to be treated as a failure to disclose, answer, or respond." *Id.*

In the Ninth Circuit, "[t]he district court is given broad discretion in supervising the pretrial phase of litigation." *Continental Lab.,* 195 F.R.D. at 677 (quoting *Miller v. Safeco Title Ins. Co.,* 758 F.2d 364, 369 (9th Cir.1985)).   If full compliance with Rule 26(a) is not made, Rule 37(c)(1) mandates some sanction, "the degree and severity of which are within the discretion of the trial judge." *Keener v. United States,* 181 F.R.D. 639, 641 (D. Mont.1998). The Ninth Circuit reviews a district court's decision to sanction for a violation of the discovery rules for abuse of discretion which gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti by Molly Ltd.,* 259 F.3d at 1106 (citing *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico,* 248 F.3d 29, 34 (1st Cir.2001)).

In *Yeti by Molly*, the Ninth Circuit recognized that some courts have upheld preclusion sanctions under Rule 37(c)(1) for a litigant's failure to comply with the requirements of Rule 26, even where they would preclude a litigant's entire claim or defense. *Id.* at 1106.   The Ninth Circuit has explicitly rejected the notion the district court is required to make a finding of willfulness or bad faith to exclude damages evidence when preclusion sanctions do not amount to dismissal of a cause of action. *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008).   However, when preclusion sanctions amount to dismissal of a claim, the district court is required to make a finding of willfulness, fault, or bad faith, and to consider the availability of lesser sanctions. *R&R Sales, Inc. v. Insurance Company of Pennsylvania,* 673 F.3d 1240, 1247 (9th Cir. 2012).

The Ninth Circuit has identified five factors that a district court must consider before dismissing a case or declaring a default: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of

less drastic sanctions.  *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997); *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 524 (9th Cir. 1997).

In most cases the first two factors weigh in favor of the imposition of sanctions, while the fourth factor cuts against dismissal.  The Ninth Circuit evaluates whether a district court properly considered the availability of lesser sanctions by examining whether the court: (1) explicitly discussed the possibility of less drastic sanctions and explained why alternative sanctions would be inappropriate; (2) implemented alternative sanctions before ordering default; and (3) warned the party of the possibility of default before actually ordering it.  *Hwang*, 105 F.3d at 524 (citing *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994)); s*ee also Valley Eng'rs v. Electric Eng'rs Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).  Ninth Circuit decisions "suggest that a district court's warning to a party that his failure to obey the court's order will result in dismissal can satisfy the 'consideration of alternatives' requirement."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1991).  The key factors the court should consider are prejudice and availability of lesser sanctions.  *Id.* (citing *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)).

Due process requires that neither dismissal nor preclusion of evidence that is tantamount to dismissal may be imposed when failure to comply is due to circumstances beyond the recalcitrant party's control.  *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980).  The Ninth Circuit has specifically encouraged dismissal, however, where the district court determines "that counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules or orders."  *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981) (quoting *G-K Properties v. Redevelopment Agency*, 577 F.2d 645, 647 (9th Cir. 1978) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976))).

**II.**    **Analysis and Decision.**

Applying these principles the court finds that Plaintiffs' failure to make required discovery disclosures concerning their damages was willful and in bad faith and that preclusion sanctions are warranted.  Specifically, the court finds that the Plaintiffs should be precluded from claiming or introducing any evidence of quantifiable economic harm attributable to Defendants'

17

alleged conduct.  Plaintiffs have steadfastly maintained in this case that they were not required to provide a damages calculation by category and method with supporting documentation because their damages were not capable of mathematical calculation. However, in response to Defendants' motion for summary judgment  Plaintiffs have taken a substantially and materially different position about what damages Plaintiffs are required to plead and prove.

Defendants' motion for summary judgment argues summary judgment should be entered on those claims which require proof of actual damages, that is, quantifiable monetary losses.  This decision does not presume to decide any of the issues before the district judge in the motion for summary judgment.  However, because this decision granting Defendants' request for preclusion sanctions may be adopted by the district judge, and potentially result in dismissal of one or more of Plaintiffs' claims, the court will apply the five factors the Ninth Circuit requires for consideration of case-dispositive sanctions.

As in most cases, the first two factors weigh in favor of preclusion sanctions.  The parties submitted a proposed discovery plan and scheduling order (Dkt. #28) December 18, 2012, which requested special scheduling review and more time than deemed presumptively reasonable under LR 26-1(e).  The court set the matter for hearing and granted the parties' request for special scheduling review and the additional time requested.  *See* Minutes of Proceedings (Dkt. #32).  The court entered discovery plan and scheduling order on January 8, 2013 (Dkt. #31) which established a July 29, 2013 discovery cutoff, and August 28, 2013 deadline for filing dispositive motions.  On July 10, 2013, the parties submitted a Stipulation (Dkt. #80) requesting a 90-day extension of the discovery plan and scheduling order deadlines to exchange initial expert disclosures indicating additional time was needed to obtain discovery.  The court granted the parties' request at a status and scheduling conference held June 25, 2013. *See* Minutes of Proceedings (Dkt #79).

On September 9, 2013, the parties submitted an additional Stipulation to Amend the Discovery Plan and Scheduling Order Deadlines (Dkt. #98) requesting an additional 15-day extension indicating the time was needed to complete depositions of non-parties and Plaintiffs' six experts which were disclosed August 30, 2013.  The court granted this stipulation. *See* Order

(Dkt. #99).  Discovery closed and Defendants timely filed a Motion for Summary Judgment (Dkt. #119) October 30, 2013, after the close of discovery in accordance with the Local Rules of Practice, and the court's discovery plan and scheduling order deadlines.

LR 26-1(e) is structured to encourage the parties to complete discovery before filing dispositive motions so that the record is fully developed and summary judgment motions are not prematurely filed.  Defendants relied upon Plaintiffs' discovery disclosures and representations to counsel and the court that Plaintiffs were not claiming any actual or quantifiable monetary damages in this case in preparing their case and then filing their motion for summary judgment. The court's scheduling orders are designed to accomplish the expeditious resolution of cases, and to manage the court's docket.  Plaintiffs' failure to provide discovery of their damages theories and supporting evidence within the time allowed by the court's scheduling orders is disruptive, a violation of the discovery rules discussed in this order, and displays an utter disregard of court imposed deadlines established to bring this case to expeditious resolution.

Defendants are prejudiced by Plaintiffs change in position and failure to make discovery disclosures concerning the damages theories asserted, for the first time, in response to Defendants' motion for summary judgment.  The only potential remedy other than preclusion would require re opening of discovery, cost the Defendants more time and money, render the work done on the summary judgment motion largely worthless and further delay resolution of this case on its merits.

The fourth factor, public policy favoring disposition of cases on their merits, weighs against ordering preclusion sanctions.  With respect to the fifth factor, the court specifically addressed preclusion of undisclosed damages information at the July 13, 2013 hearing, and in the written Order (Dkt. #91) following the hearing which granted in part and denied in part Defendants' request to compel supplemental responses to the Defendants' answers to interrogatories and responses to request for production of documents.  As indicated, the court required supplemental responses with respect to certain discovery requests and not others because of Plaintiffs' repeated representations that Plaintiffs had no quantifiable monetary damages.  The court specifically inquired of counsel for Plaintiffs whether the Plaintiffs "could

1    live with" an order precluding Plaintiffs from introducing any evidence of actual damages to test

2    the sincerity of these representations.  Mr. Glassman responded "I know of no actual damages."

3    Transcript of Hearing (Dkt. #90) 19:17-20.

4            Mr. Glassman went on to make additional statements that Plaintiffs had "no way of

5    knowing, it was impossible to calculate the exact amount of money" the Defendants' conduct

6    caused, and that there was "no way" to calculate the Plaintiffs' lost "X number of dollars" as a

7    result of the Defendants' conduct.  As indicated earlier in this order, these arguments were not,

8    as Plaintiffs' opposition to this motion now claims, limited to the defamation or defamation per

9    se claims. Plaintiffs were explicitly warned that preclusion sanctions would be ordered for a

10   violation of their discovery obligations and representations to the court and opposing counsel.

11   Under these circumstances, less drastic sanctions would reward the conduct Plaintiffs were

12   warned was impermissible and would not be tolerated.

13           To permit Plaintiffs to now claim that they have quantifiable monetary damages in any

14   context in this case—in motion practice or at trial—would reward the type of gamesmanship and

15   trial by ambush the Federal Rules of Civil Procedure and the cases construing them were

16   designed to avoid.

17           Counsel for Plaintiffs successfully persuaded the court that Plaintiffs should not be

18   compelled to supplement discovery responses designed to obtain information about Plaintiffs'

19   damages contentions and supporting documentation because they were not required to plead or

20   prove damages capable of monetary calculation on any of their claims. Allowing the Plaintiffs to

21   maintain an inconsistent position in response to Defendants' motion for summary judgment or at

22   trial would give the Plaintiffs an unfair advantage and impose an unfair detriment on the

23   Defendants.  It would allow and encourage the type of chicanery and manipulation of the judicial

24   process that flies in the face of fundamental fairness.

25           For the reasons stated, and having carefully reviewed and considered the moving and

26   responsive papers and voluminous supporting exhibits, declarations and transcripts,

27           **IT IS ORDERED** that:

28

1.   Defendants' Motion to Exclude Evidence Regarding Plaintiffs' Actual Damages (Dkt. #150) is **GRANTED** to the extent that Plaintiffs shall be precluded from claiming or introducing any evidence of quantifiable economic harm attributable to the Defendants' alleged conduct for any purpose in this case, including motion practice and trial.

2.   Plaintiffs' Motion to Strike Defendants' Sur-Reply (Dkt #175) is **DENIED.**

DATED this 7th day of May, 2014.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE