UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRADLEY STEPHEN COHEN, et al.,<br><br>　　　　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>ROSS B. HANSEN, et al.,<br><br>　　　　　　　　　　Defendant(s). | Case No. 2:12-CV-1401 JCM (PAL)<br><br>ORDER |

Presently before the court is defendants Ross B. Hansen, Northwest Territorial Mint, LLC, and Steven Earl Firebaugh's motion for a new trial or, in the alternative, *remittitur* or relief pursuant to Rule 60(b). (Doc. # 348). Plaintiffs Bradley Stephen Cohen and Cohen Asset Management, Inc. filed a response. (Doc. # 350). Defendants filed a reply. (Doc. # 368).

**I.    Background**

Plaintiffs initiated this matter after defendants created a defamatory website comparing plaintiff Stephen Cohen, an investor, and his real estate investment fund, plaintiff Cohen Asset Management, Inc. ("CAM"), to notorious fraudster Bernie Madoff and his investment fund. On February 8, 2016, plaintiffs proceeded to trial against defendants on claims for defamation *per se* and false light invasion of privacy. The jury returned a verdict on February 17, 2016. (Doc. # 325). The jury found in plaintiffs' favor on each claim against each defendant and awarded plaintiffs damages from each defendant. The court entered judgment on March 1, 2016. (Doc. # 331).

The discovery process in this matter was contentious. Plaintiffs refused to respond to certain of defendants' discovery requests related to the financial condition of CAM. Plaintiffs repeatedly represented to the court that they had no proof of actual damages or quantifiable economic harm, that they did not intend to present any theory of such damages, and that they were only seeking general presumed damages.

**James C. Mahan**
**U.S. District Judge**

Based on those representations, Magistrate Judge Leen "compelled the [p]laintiffs to supplement certain discovery responses that were ambiguous . . . [in order] to require the [p]laintiffs to plainly specify that the only damages claimed in this case were presumed damages and that [p]laintiffs were not claiming any damages that were capable of mathematical calculation." (Doc. # 178 at 13 (citing doc. # 91)). The court warned the [p]laintiffs that failure to comply with their discovery obligations would result in preclusion sanctions. (*See* doc. # 91).

On October 30, 2012, defendants filed a motion for summary judgment as to the claims requiring actual damages. Plaintiffs then argued, for the first time, that they suffered actual damages. (Doc. #135). The court thereafter ordered sanctions precluding plaintiffs from claiming or introducing any evidence of "quantifiable economic harm" because of their willful failure to provide discovery of the same, in violation of Judge Leen's prior order. (*See* doc. #178).

Based on the fact that plaintiffs could not offer evidence supporting actual damages, the court granted summary judgment in favor of defendants on each claim for which actual damages are required as a matter of law. (Doc. # 228). Plaintiffs thus proceeded to trial on theories of presumed damages only on their claims for defamation *per se* and false light invasion of privacy.

The jury awarded plaintiffs damages totaling $38.3 million. Defendants have filed a motion for relief under Federal Rules of Civil Procedure ("Rules") 59 and 60(b). Defendants ask the court to grant a new trial on the issue of damages based on their belief that the jury "likely included in its award determination calculations [and] compensation for lost revenues and lost business opportunities, which violates the [c]ourt's prior ruling that such alleged actual damages, also [referred to under Nevada law] as special damages, shall not be admissible in this case." (Doc. # 348 at 3). Alternatively, the defendants ask the court for *remittitur* or relief pursuant to Rule 60(b)(1) and (6).

**II.     Legal Standard**

"A court may, on motion, grant a new trial to all or some of the issues and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for new trial may be granted." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007). A court may grant a new trial only on "grounds that have been historically recognized." *Id.*

"Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the

**James C. Mahan**
**U.S. District Judge**

- 2 -

trial was not fair to the party moving." *Id.* The Ninth Circuit has also held that, "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

Erroneous jury instructions, as well as the failure to give adequate instructions, are grounds for a new trial unless the error is harmless. *Murphy v. City of Long Beach.* 914 F.2d 183, 187 (9th Cir. 1990). To grant a new trial on improperly admitted evidence, the admission must have constituted prejudicial error. *Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir. 1985) (citing FED. R. CIV. P. 61). The decision whether to grant a motion for new trial is within the district court's discretion. *Id.*

### III. Discussion

#### A. Defendant's motion for new trial

The defendants' argument proceeds in several layers. First, they argue that the court allowed plaintiffs to violate Judge Leen's May 8, 2014, order, which precludes plaintiffs from "introducing any evidence of quantifiable economic harm attributable to the [d]efendants' alleged conduct for any purpose in this case." Defendants contend that plaintiffs' presentation of evidence of the approximate dollar value of lost business opportunities and of the amounts spent by plaintiffs to combat the defamatory website violates the order. (Doc. # 178); (*see* doc. # 348). They thus assert that the court improperly allowed the testimony.

Second, defendants argue that the court improperly instructed the jury to consider loss of business in its consideration of presumed damages. Defendants maintain that Nevada law does not contemplate loss of business as a basis for consideration in determining presumed damages, citing to *K-Mart Corp. v. Washington*, 109 Nev. 1180 (1993).

Third, they suggest that it is probable that the jury's consideration of the quantifiable aspects of plaintiffs' witnesses' testimony under the court's instruction to consider loss of business in its determination of an appropriate award of presumed damages contributed to the high award in this case. Defendants assert that the damage award was therefore excessive, entitling them to a new trial.

##### i. Nevada law on presumed damages

As explained above, plaintiffs in this case sought only presumed damages at trial. The parties disagree about whether loss of business is a lawful basis for the jury to consider in its

James C. Mahan
U.S. District Judge

deliberations of such damages. Defendants now argue that loss of business is not a basis under Nevada law for presumed damages. They contend that evidence of such was impermissible at trial and the court's instruction informing the jurors that presumed damages could be awarded to compensate plaintiffs for, amongst other things, loss of business constituted error.

The court did not err by instructing the jury to consider loss of business in its determination of a presumed damages award. Under Nevada's defamation *per se* scheme, a plaintiff who proves that a statement is defamatory *per se* is entitled to presumed damages "for the harm which normally results from such a defamation." *K-Mart Corp. v. Washington*, 109 Nev. at 1195 (quoting *Gertz v. Robert Welch, Inc.*, 94 S. Ct. 2997, 3023, (1974)). "Damages are presumed "because of the impossibility of affixing an exact monetary amount for present and future injury to the plaintiff's reputation, wounded feelings and humiliation, *loss of business*, and any consequential physical illness or pain." *Id.* (quoting *Gertz*, 94 S. Ct. at 3023, n. 4) (emphasis added).

The Nevada Supreme Court has thus explicitly stated that loss of business is an appropriate category of injury for consideration in setting a presumed damages award because of the "impossibility of affixing an exact monetary amount for [plaintiff's] present and future . . . loss of business." *Id.* Furthermore, although the damages are presumed because of the "impossibility of affixing an exact monetary amount," a plaintiff seeking only presumed damages is not precluded from offering evidence of loss of reputation or business. *See Nevada Indep. Broad. Corp. v. Allen,* 99 Nev. 404, 418, (1983) ("The [presumed damages] award must be supported by competent evidence, though not necessarily of the kind that "assigns an actual dollar value to the injury." (quoting *Gertz*, 94 S. Ct. at 3011–12)).

Defendants cite to an earlier portion of the *K-Mart* decision in which loss of business is not included in the court's list of some of the types of injury for which monetary calculation is impracticable. *See K-Mart*, 109 Nev. at 1194 ("General damages in a defamation case represent the other effects of the defamation on the plaintiff, including loss of reputation, shame, mortification and hurt feelings."). First, the *K-mart* court does not indicate that the list of "other effects" cited to by defendants is exclusive. *See id*. Given the fact that the court includes loss of business as another such effect in the *very next* paragraph, it is not likely the court intended the list to be exclusive. *See id.* at 1195. This court will not interpret the Nevada Supreme Court's opinion

James C. Mahan
U.S. District Judge

- 4 -

to contradict itself, but will instead accept the more natural reading that the first list was not exhaustive.

Moreover, the portion of the opinion cited to by defendants is describing presumed damages in the context of a normal defamation claim, in which actual damages must be proved before general damages are presumed. *See id.* Here, plaintiffs brought claims of defamation *per se*, which does not require proof of any actual damages because "in many cases of [defamation that is actionable *per se*] . . . it is impossible [to] directly trace the effects thereof in loss to the person defamed." *Id.* (quoting *Gertz*, 94 S.Ct. at 3023).

Indeed, in the context of a claim for defamation *per se*, the *K-Mart* decision holds that the "jury is permitted to assess damages considered to be the natural and probable consequences of the defamatory words." *Id.* (citing *Gertz*, 94 S.Ct. at 3023). Loss of business is a "natural and probable" consequence of a defamatory statement falsely accusing plaintiffs of fraud in their business dealings.

Defendants' argument is premised on the fact that loss of business is a part of actual damages, and that, therefore, it is not an appropriate basis for presumed damages. Loss of business could result in actual damages, but defendants fail to cite to any case law indicating that any injury that could form a basis for actual damages cannot form a basis for presumed damages. To the contrary, as explained above, presumed damages are meant to compensate a plaintiff for actual damage that does not lend itself to exact monetary calculation. *See, e.g.*, *Gertz*, 94 S. Ct. at 3023, n. 4. Moreover, Nevada case law explicitly lists loss of business as an appropriate basis for recovery of presumed damages. *See K-Mart*, 109 Nev. 1195.

The *K-Mart* decision quotes and cites to the U.S. Supreme Court's *Gertz* decision extensively. *See K-Mart*, 109 Nev. 1194–95. The citations and quotes draw primarily from Justice White's dissent therein. *See id*; *Gertz*, 94 S. Ct. at 2023–3025. Defendants argue that in his dissent, Justice White laments a change in the law, and that any reference thereto by the *K-Mart* court was similarly describing law that no longer existed.

The argument is feeble at best and disingenuous at worst. Justice White's dissent criticized the fact that the majority's opinion in *Gertz* limited the application of presumed damages to defamation cases in which the defendant had acted recklessly or with actual malice. *See Gertz*, 94 S.Ct. at 3025. In no way did *Gertz* limit the scope of types of injuries for which presumed damages

**James C. Mahan**
**U.S. District Judge**

- 5 -

were applicable, nor did Justice White's dissent discuss any such limitation. *See Gertz*, 94 S.Ct. at 3023–25. There is no support for defendants' argument in any part of the *Gertz* opinion. *Id.*

Finally, defendants now complain about a jury instruction that the parties jointly proposed to the court. (*See* doc. # 268 at 43). Moreover, when given an opportunity to object to the instructions the court indicated that it would give during the settling of the jury instructions in open court, defendants failed to object to the jointly proposed presumed damages instruction despite lodging numerous objections to other instructions. (*See* doc. # 340, 198–232). The court did not err by reading an instruction proposed jointly by the parties, to which defendants did not object when given an opportunity, that directly quotes valid authority on Nevada defamation *per se* law. *See K-Mart*, 109 Nev. at 1195.

### ii. Judge Leen's Order

Judge Leen's lengthy May 8, 2014, order has a clear ruling: "[p]laintiffs shall be precluded from claiming or introducing any evidence of quantifiable economic harm attributable to the [d]efendants' alleged conduct for any purpose in this case, including motion practice and trial." (Doc. # 178 at 17-18, 21). The order also contains a substantial amount of background material intended to provide legal and factual context to the order. The effect of the order, however, is limited to the language quoted above.

Based on that language, as well as a background discussion of the distinction between actual and presumed damages found earlier in the order (*see id.* at 5),[1] defendants interpret the order to preclude any evidence that includes any quantity of money in any context, as well as any evidence of loss of business. That interpretation is not supported by the order, however.

First, defendants appear to read the words "economic harm" out of the phrase "quantifiable economic harm." They object to several instances in which plaintiff Bradley Cohen, while testifying as a witness, mentioned the dollar value of missed investment opportunities for his fund, plaintiff CAM. First, they object to Cohen's testimony that CAM's pursuit of a "$21 million" real estate acquisition fell apart after the bank financing the deal visited the defendants' website. (*See* doc. # 342-1 at 27). Second, they object to his testimony that CAM's partner in another botched

---

[1] Nevada defamation law uses the terms special and actual damages interchangeably. The law gives similar treatment to the terms general and presumed damages. The parties and the court have used all four names for the varying damages throughout the course of this litigation. To avoid confusion, the court will use the phrases actual damages and presumed damages exclusively in this order.

**James C. Mahan**
**U.S. District Judge**

- 6 -

deal was planning on investing "$110 to $130 million" *alongside* CAM before it caught wind of defendants' website.

The testimony certainly contains quantities of money. Neither instance, however, is evidence of quantifiable economic harm to the plaintiffs. With respect to plaintiff CAM, a missed investment opportunity may have resulted in economic harm or economic benefit, depending on the outcome of the investment. If the investments would have been successful, then the lost opportunities represent economic harm. If the investments would have been unsuccessful, then the lost opportunities would actually represent an economic benefit to the fund. Similarly, plaintiff Cohen's interest in the transactions would have been dependent on whether the investments were successful as well as the details of his management fee agreement with CAM.

Regardless of profit or loss, it is impossible for a court or a jury to divine the extent of the success or failure of an investment that never happened. That is what makes the "exact monetary [harm]" that flows from such a loss of business impossible for a jury to determine, which is why the law presumes damages in defamation *per se* cases. *See, e.g.*, *K-Mart Corp. v. Washington*, 109 Nev. 1180, 1195.

Judge Leen's order precludes evidence of *quantifiable economic harm*, not evidence of any economic quantity. Here, Cohen's testimony contained only the approximate size of deals that didn't materialize, which is consistent with his counsel's representations to Judge Leen that "there will be no testimony whatsoever with respect to any specific sum of money or sums of money *that were lost as a consequence*" (*See* doc. # 178 at 11) (emphasis added) and that plaintiffs had no damages *capable of mathematical computation*. (*Id.* at 12) (emphasis added).    The court finds that Cohen's testimony did not include any sums of money that were *lost as a consequence* of defendants' websites, did not include sums of money that supported damages *capable of mathematical computation*, and thus did not violate the spirt of Judge Leen's order. Cohen did not testify to any lost revenue or profit that would be amendable to mathematical calculation.

Next, defendants argue that testimony from plaintiff Cohen about the approximate amounts of money he spent to hire search engine optimization experts—retained to 'push' defedants' website down in rankings of internet searches for plaintiffs' names—violated Judge Leen's order. (*See* doc. # 342-1 at 40). Cohen indicated he had spent around $100,000.00 to $200,000.00 on search engine optimization. (*Id.*) Defendants' trial counsel, who did object at the time of the

testimony on hearsay grounds, failed to object on grounds that the testimony violated Judge Leen's order. (*Id.*)

The court specifically instructed defendants that instead of entering a broad ruling on their motion *in limine* to preclude evidence of "quantifiable economic harm," it would rely on defendants' objections to evidence they believed violated Judge Leen's order. (Doc. # 350-1 at 40, 45). Here, defendants failed to make such an objection.

Testimony about the approximate amount of money spent to combat the websites' high search rankings is, however, evidence of quantifiable economic harm attributable to defendants' websites. Assuming *arguendo* that defendants' had objected to such testimony, the court finds that any error in allowing the testimony was harmless. *See* FED. R. CIV. P. 61. Here, as discussed more fully below, plaintiffs introduced substantial evidence of loss of business and loss of reputation, as well as shame, humiliation, and hurt feelings, all of which are grounds for presumed damages and support the jury's award herein. *See supra K-Mart,* 109 Nev. 1194–95.

To the extent Mr. Cohen's testimony about search engine optimization fees was considered at all by the jury, it played an insignificant role in the total amount awarded on each claim. Admitting such evidence did not affect the substantial rights of defendants and constitutes harmless error. *See* FED. R. CIV. P. 61.

### iii. The awards were not excessive

The jury awarded plaintiffs a total of $38.3 million. Defendants argue that the size of the award is "likely" attributable to plaintiffs' allegedly improper introduction of the evidence of loss of business described above. First, the court finds that the evidence of loss of business was properly admitted by the court and considered by the jury, as described above. Second, assuming *arguendo* that the evidence should not have been before the jury, defendants do not provide any basis for their assumption that the jury's consideration of a few monetary sums presented during the testimony of plaintiffs' witnesses overrode its consideration of the evidence of loss of reputation, shame, mortification, hurt feelings, and consequential physical illness presented throughout the rest of plaintiff's extensive case in chief.

The record contains substantial evidence of loss of reputation and shame, in particular, to which defendants do not object. Neither the defendants nor the court can speculate as to how the jury calculated its damages award. Given the significant evidence of loss of reputation, shame, mortification, and hurt feelings, all of which the parties agree support presumed damages,

however, the jury had significant evidence on which to support its determination of presumed damages.

Indeed, "the mere fact that a verdict is large is not in itself 'conclusive that it is the result of passion or prejudice." *Matlock v. Greyhound Lines, Inc.*, 2010 WL 3171262, at *4 (D. Nev. Aug. 10, 2010) (quoting *Beccard v. Nevada National Bank,* 99 Nev. 63, 657 P.2d 1154, 1156 (Nev.1983)). Any error did not affect defendants' substantial rights and was therefore harmless. FED. R. CIV. P. 61.

B.   *Defendants' request for remittitur*

If a court determines that a damage award is excessive, it may consider *remittitur* as an alternative to granting a motion for new trial:

> When the court, after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives. It may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a *remittitur*. The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified.

*Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983) (citing *Minthorne v. Seeburg Corp.,* 397 F.2d 237, 244–45 (9th Cir.1968); *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53, 65–66 (1966)).

The court has already found that the jury award in this matter was not excessive given the substantial, properly admitted evidence of loss of reputation, shame, mortification, and hurt feelings offered by plaintiffs at trial. *Remittitur* is thus not appropriate and the court will not consider it as an alternative to granting defendants' motion for a new trial.

C.   *Defendants' request for relief pursuant to Rule 60(b)*

Rule 60(b) provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . [or] (6) any other reason that justifies relief." FED. R. CIV. P. 60(b)(1) and (6). As this court recently stated, this is an "extraordinary sanction" requiring a showing of "extraordinary circumstances." *United States v. Garcia*, 2015 WL 162992, at *2 (D. Nev. Jan. 13, 2015) (citing *Allmerica Fin. Life Ins. & Annuity v. Llewellyn,* 139 F.3d 664, 666 (9th Cir.1997)).

As discussed above, the court finds that no mistake, inadvertence, or excusable neglect exists herein. Furthermore, any error committed was harmless under Rule 61. *See* FED. R. CIV. P. 61. Defendants have not provided "any other reason that justifies relief." *See* FED. R. CIV. P.

James C. Mahan
U.S. District Judge

- 9 -

60(b)(6). Defendants have not made a showing of "extraordinary circumstances" justifying relief under Rule 60. *See Allmerica Fin. Life Ins.*, 139 F.3d at 666.

## IV.     Conclusion

Defendants have not made a showing sufficient to entitle them to a new trial, *remittitur*, or relief pursuant to Rule 60(b).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Ross B. Hansen, Northwest Territorial Mint, LLC, and Steven Earl Firebaugh's motion for a new trial or, in the alternative, *remittitur* or relief pursuant to Rule 60(b) (doc. # 348) be, and the same hereby is, DENIED.

DATED April 27, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**